[No. 601. Decided June 7, 1893.]

FELIX PROULX, FRED TERRIEN, EUGENE CHEVRET AND SAMUEL CHARETTE, *Respondents*, v. STETSON AND POST MILL COMPANY AND A. J. BAKER, *Appellants*.

LOGS AND LOGGING—LIENS—UPON WHAT PROPERTY MAY BE CLAIMED—FOR WHAT LABOR—MISTAKE IN AMOUNT DUE—JUDGMENT BY DEFAULT—ATTORNEY FEES.

Under §§ 1679 and 1690, Gen. Stat., one who has performed labor in securing saw logs may enforce a lien against a part of the property upon which he has expended labor for all the labor performed upon the whole lot of saw logs, provided the logs all belonged to the same owner, and the labor was performed under one entire contract. (STILES, J., dissents.)

One who constructs a necessary road by which certain logs are taken from the forest to the mill, or to the water and afterwards to the mill, or to market, as much assists in obtaining and securing such logs as if he were engaged in cutting or sawing them, and is entitled to a lien for such labor.

An innocent mistake in a lien notice as to the exact amount due a laborer for his hire will not defeat the lien.

Although a formal default may not have been entered against a defendant before the trial of a cause, yet the supreme court will uphold a judgment against him on appeal, where it appears by the record that the time for answering had expired, and that testimony was given at the trial as to the amounts due from him to plaintiffs.

Where the amount of attorney's fee in an action for the foreclosure of logger's liens is left to the discretion and decision of the court, a judgment therefor will not be disturbed, although no testimony may have been offered as to the reasonable value of such services.

*Appeal from Superior Court, King County.*

*Battle & Shipley*, for appellants.

*W. D. Lambuth*, for respondents.

The opinion of the court was delivered by

ANDERS, J.—The respondents instituted a joint action against one James V. Taylor to recover the amounts al-

leged to be severally due them for labor in securing saw logs, and to foreclose loggers' liens on a certain boom of logs, consisting of about 388,000 feet in quantity, which were alleged to be in the possession of the Stetson & Post Mill Company as the vendee of Taylor. Baker intervened in the action, by leave of the court, and joined with the defendant mill company in resisting the foreclosure of plaintiffs' liens. Taylor did not appear in the action, and the plaintiffs obtained judgment against him for the respective amounts found due them, and a decree establishing and foreclosing their liens. The mill company and the intervenor appealed.

The complaint, in the several causes of action, alleges in substance that each of the respondents worked a certain number of months, or days, in securing saw logs, and that they ceased to labor upon the logs in question on the 3d day of December, 1890, but it nowhere alleges the number of days worked by each respondent upon the boom of logs upon which they seek to foreclose a lien, or the date at which they began to labor thereon. The lien notices were made a part of the complaint. It is shown by the record that each of the respondents was hired by Taylor to work in his logging camp by the month at a specified rate of wages, and that while so employed they performed labor in getting out other logs than those in controversy, and which were rafted and perhaps disposed of and taken away, before they ceased work under their contracts, and even before work was commenced upon the particular logs upon which the liens are claimed. The lien notices state that the labor and assistance therein mentioned was performed in obtaining and securing said logs, meaning the logs in dispute. And the appellants claim that there is a fatal variance between the allegations of the complaint and the notice and proofs. In other words, their contention is that it should have been alleged and proved that all of the labor

for which a lien is claimed was performed upon these identical logs, and that no lien can attach for services, any part of which was rendered in securing other logs, although all the labor was performed for the same party, in the same logging camp, and under one continuous contract.

We do not so construe the law.    Sec. 1679, Gen. Stat., provides that "every person performing labor upon, or who shall assist in obtaining or securing sawlogs   .   .   . has a lien upon the same for the work or labor done upon or in obtaining or securing the same, whether such work or labor was done at the instance of the owner of the same or his agent."    If that section stood alone there would be some force in appellants' contention.    But this provision must be read in connection with § 1690, which provides, in substance, that any person who shall bring an action to enforce his lien has a right to demand that such lien be enforced against the whole or any part of the sawlogs upon which he has performed labor, or which he has assisted in obtaining or securing, during eight calendar months next preceding the filing of his claim of lien, for all his labor upon or for all his assistance in obtaining or securing said logs during the whole or any part of the said eight months. The construction of the statute contended for by the appellants would render this latter section meaningless or nugatory, and would, in many instances, deprive the laborer of the benefit of the greater portion of his labor.

In cases where a portion of the logs have been lost, or disposed of by the owner, during the progress of the general business of logging, it would certainly be a harsh rule that would impose upon one who rendered necessary services in securing all the logs produced during the eight months' time limit, or during the time of his employment, the necessity of ascertaining the exact amount due for labor performed upon the remainder, and then permit him to foreclose his lien only for that amount, although the

value of the logs remaining may be amply sufficient to secure the amount due for his entire services. And such, we think, was not the intention of the legislature. These lien statutes are remedial in their nature, and ought to be liberally construed in the interests of labor, and courts do almost uniformly so construe them. Even under statutes no more comprehensive in their terms than § 1679, and containing no such provision as is found in § 1690 of our statute, it has been held, and we think justly, that a laborer might enforce his lien against a part of the property upon which he has expended labor for all the labor performed upon the whole, provided the property belonged to one owner and the labor was performed under one entire contract. Under such circumstances, the labor is deemed, in legal contemplation, performed wholly upon such part of the logs. *Martin v. Wakefield*, 42 Minn. 176 (43 N. W. Rep. 966); *Appleman v. Myre*, 74 Mich. 359 (42 N. W. Rep. 48). We are unable to perceive why the rule should be otherwise. No hardship can result from its application, unless it be to the laborer himself. It can certainly work no injury to the owner to compel him to pay his debt out of the proceeds of part of his property rather than the whole thereof; and persons who purchase property subject to a lien do so at their peril in any event.

There is nothing in the statute requiring a laborer in a logging camp under a general contract of employment, to incur the expense and trouble of filing a lien as often as the owner of the logs for whom he works may see fit to ''boom'' a portion of them for his own purposes. All that is required is that the claim of lien be filed within thirty days after the close of the rendition of services, in which event it attaches upon all the logs upon which, or in the securing of which, the claimant performed labor, or rendered assistance, for a period of eight months prior thereto. That the claimant's rights cannot be affected by

the mere fact that the logs which he assisted in securing may have been made up into different booms, where each boom is not worked upon under a separate contract, was recently decided by this court in the case of *Overbeck v. Calligan, ante*, p. 342.

It appears from the record that at least three of the four respondents worked a portion of the time while employed by Taylor in constructing roads to be used, and which were used, in the transportation of logs from his camp to the water, and that the value of such services was included in the amount for which they seek to foreclose their liens. By so doing the appellants urge that these respondents have mingled privileged with non-privileged claims, and thereby destroyed their liens as a whole.   While not disputing the proposition of law that a lien claimant might so commingle claims for which no lien is given with those for which a lien is awarded, as to invalidate the lien even as to the unobjectionable portion of the claim, yet we do not think that this is a proper case for the application of the principle.   To our minds it is plain that one who constructs a necessary road by which logs are taken from the forest to the mill, or to the water and afterwards to the mill, or to market, as much assists in obtaining and securing such logs as if he were engaged in cutting or sawing them.   Saw logs can no more be ''obtained'' or ''secured'' without proper roads by means of which they may be conveyed to some place where they may be utilized as such than they can be without axes or saws or any other of the various tools and appliances necessarily used in conducting a logging camp.   One man may be exclusively engaged in driving a team used in hauling the logs, another in felling the trees, and still another in sawing the trees into convenient lengths, but they are each and all in contemplation of the statute engaged in the same business, namely, getting out saw logs.   The statute is broad enough

to fairly include all kinds of labor necessarily performed in and about a logging camp.    And, lest the courts might be inclined to construe it too narrowly, the legislature has itself declared that the cook in a logging camp shall be entitled to the benefits of the statute.    The fact that a logging road, constructed for the purpose of transporting a particular lot of logs, may subsequently be used for the transportation of other timber is perfectly immaterial.    As well might we say that a laborer who necessarily spends a portion of his time in grinding axes or filing saws shall not have his lien because these implements may afterwards be used in getting out other logs.

It is claimed by the appellants that the fact that the court below found that there was due the respondents, or some of them, for their services, a less amount than was claimed in their lien notices, defeats the liens.    We fail to discover in the record the testimony upon which the court based its conclusions in this regard, but assuming the fact to be as found, we do not think the liens should, for that reason alone, be declared invalid.    There is nothing to show that either of the claimants willfully attempted to claim a lien for more than was justly due him, or that either of them did not state the amount of his demand after deducting all just credits and offsets, "as near as possible," at the time of filing his notice in the auditor's office.    We are not willing to concede that innocent mistakes as to the exact amount due laborers for their hire shall deprive them of the benefit of a statute specially enacted in their interest.    And, in this respect, we think we are in accord with the authorities under statutes analogous to ours.    Phillips on Mech. Liens (2d ed.), § 356; 2 Jones on Liens, § 1413.

The record fails to show affirmatively that a formal default was entered against the defendant Taylor before the trial of the cause, but it does appear that the time for an-

swering had expired, and that testimony as to the amounts due from him to the respondents was given at the trial. Aside from the presumptions that prevail in favor of the regularity of the proceedings of courts of general jurisdiction, the facts in this case are not similar to those in the case of *Dexter Horton & Co. v. Sparkman*, 2 Wash. 166 (25 Pac. Rep. 1070), in which this court ruled that a judgment given without a default having been entered, and without proof of the amount due, was erroneous; and the decision in that case is, therefore, not controlling here, and the objection of appellant upon that ground cannot be sustained.

The trial court gave judgment in favor of the respondents for the sum of fifty dollars as attorney's fees, and the appellants contend that the court erred in so doing for the reason that no testimony was offered to show the reasonable value of the services of counsel in this action.    As a general rule, where the value of such services is alleged in the complaint, in order to recover, it must be proved, and this court, in effect, so held in *Cowie v. Ahrenstedt*, 1 Wash. 416 (25 Pac. Rep. 458).    But in this case the appellants, in their answer, have admitted that any sum less than fifty dollars is a reasonable attorney fee by simply denying that that particular sum is reasonable.    And, besides, we gather from the findings of the court that the question of the *amount* of attorney's fees, which was the only issue, if any, raised by the pleadings upon that subject, was, as we infer, without objection, left wholly to the discretion and decision of the court without calling witnesses.    Under these circumstances, and in view of the fact that the amount fixed by the court is a very moderate one, we do not feel disposed to disturb the judgment on the ground of error in that particular.

But we are of the opinion that the decree in so far as it establishes a lien in favor of the respondent Terrien must

be reversed, as we are unable to find in the record any proof whatever of the amount due him, or even any evidence that anything whatever was due him from Taylor, either at the time of the trial or at the time of the filing of his notice of claim of lien. If any such testimony was offered we fail to discover it, and the appellants assert in their brief that none was produced. He did not testify in his own behalf, and his witness not only did not undertake to show the amount due him, but did show a different contract of employment in one respect between him and Taylor from that set forth in his claim of lien.

The judgment of the lower court is affirmed, except as to the lien of Fred Terrien, as to which it must be reversed.

DUNBAR, C. J., and SCOTT, J., concur.

STILES, J. (*dissenting*). — My objections to the opinion of the court are confined entirely to the first point. The statute says that those who labor in getting out logs shall have a lien for all such labor performed within the previous eight months. But I take it that the intention is that the lien notice as well as the complaint shall state the facts, and that was not done in this case. These notices did not apprise either the owner or the purchaser that any wages were claimed except such as were earned in the production of the particular logs sought to be foreclosed upon, and until the trial it was not known that in the neighborhood of half of the claims were for wages earned by labor upon entirely different logs; and for that reason they ought to have been rejected as not complying with Gen. Stat., § 1685.

HOYT, J., dissents.