[No. 9697. Department Two. January 18, 1912.]

## EVA J. HUNT et al., *Respondents*, v. PANHANDLE LUMBER COMPANY, LIMITED, *Appellant*.[1]

LOGS AND LOGGING—LABORER'S LIENS—SERVICES OF TEAM—STATUTES. Under Rem. & Bal. Code, § 1162, the owner of teams has a lien for their services in getting out logs without the rendition of any personal services by him.

APPEAL—EXCEPTIONS—REVIEW—FINDINGS—PRESUMPTIONS. Findings not excepted to will be presumed to be supported by the evidence.

BILLS AND NOTES—CHECKS—PRESENTATION—WANT OF DILIGENCE—EXCUSE FOR FAILURE TO PRESENT. Failure to present checks is not excused because it was difficult and inconvenient to leave camp and present the checks in person, where the checks could have been presented in due course of mail, and would have been paid if so presented.

LOGS AND LOGGING—LABORER'S LIENS—DEFENSES—PAYMENT. Loggers' liens cannot be enforced against innocent third parties by laborers who were given checks for the amount of their claims, which,

[1]Reported in 120 Pac. 538.

through their negligence and laches, were not presented until after the funds in bank for their payment had been withdrawn by the absconding contractor.

EQUITY—MAXIMS—LOSS BY INNOCENT PARTY. The maxim that where one of two innocent parties must suffer a loss by the act of a third person, the loss must fall upon the one whose act made the loss possible, applies as between a person claiming a lien on logs, who neglected to cash his check, and an innocent holder of the logs.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered February 25, 1911, upon findings in favor of the plaintiff, in an action to establish loggers' liens, after a trial to the court. Modified.

*Charles L. Heitman* and *Graves, Kizer & Graves,* for appellant.

*L. J. Birdseye,* for respondents.

MORRIS, J.—Appeal from a decree establishing loggers' liens in favor of respondents. The court below made findings of fact, to which appellant took due exceptions. These findings are not printed in the brief, as provided for by the rules of this court, appellant giving as its reason for not doing so that it desires to raise questions of law only. These findings not being printed nor exceptions to them urged as error, we shall confine our review of the case to questions of law only.

The first error urged is that Mrs. Hunt is estopped from asserting any lien by reason of her general conduct in connection with the business affairs of the logging operations. It would require too much space to set forth all the facts under which this estoppel is claimed by appellant and denied by Mrs. Hunt. It is sufficient to say we can find no estoppel in the matters complained of. Mrs. Hunt's claim was partly for services as cook in the camp, and partly for the hire of two teams of horses owned by her.

Appellant's second claim of error is that no lien will lie for the services of the teams, as no personal service was

rendered by Mrs. Hunt in connection with the teams, and that our law does not provide a lien for the mere hire of teams to a logger. Our statute, Rem. & Bal. Code, § 1162, disposes of this error in expressly providing that the owner of any team which shall haul or assist in hauling any sawlogs shall have a lien upon such logs for the services of the team in hauling the same. Appellant cites many cases from states having no such statute, to the effect that the lien is only extended to such instrumentalities as the claimant makes personal use of in his work. However that may be, in jurisdictions where no lien is allowed by statute for the haul of the team, it is hardly a debatable question under our statute, and its citation is all that is necessary to rule against appellant's claim of error in this connection. One of these teams was hired by the day; the other was to be paid for at the rate of twenty-five cents per thousand feet for all logs handled by it.

It is next claimed that there is no competent evidence to establish the amount Mrs. Hunt is entitled to receive for the team working by the thousand. The findings are quite full upon this point, and as no exception is urged to them, we will assume there was competent evidence to establish the amount as found by the court.

The next error urges an estoppel on these facts: Mrs. Hunt received a check for $250 on January 29, 1910, from Wray, who was the logging contractor doing the work for appellant. This check was not presented at the bank for payment until March 10, when payment was refused for want of funds, Wray having decamped and exhausted his credit at the bank some time during the last week in February. Had this check been presented at the bank, it would have been paid at any time previous to the 25th of February.

The same situation is shown in Kunkleman's case. He received four checks, which were not presented, in dates and amounts as follows: January 24, $50; February 10, $65; February 15, $20; February 26, $135. All of these checks

except the last one would have been paid on presentation. The only excuse given is that it was difficult and inconvenient to leave the camp to present the checks in person. We do not understand, accepting the situation upon which the plea of inconvenience and difficulty is based, why the checks could not have been presented in the due course of mail. As between the maker and the payees of these checks, it would make no difference; but where, as in this case, the rights of an innocent third party intervenes, we cannot escape the conclusion that these claimants must be charged with their own laches in failing to obtain the payment of these checks. The lien statute is an equitable one, to protect laborers in their hire. It would be far from equitable to make such use of it as to enable laborers to collect their wages with added costs from the owners of the logs, when the logger primarily liable for this hire had given them the means of payment which they refuse and neglect to take advantage of until it is too late, and then attempt to assert their claims against innocent third parties against whom they would have had no claim had they acted with due diligence. Any one who asserts an equitable claim must act fairly and proceed with diligence, or he will lose it. It was neither fairness, diligence, nor equity for these claimants to neglect to cash these checks until the maker had played out his string, and then seek to enforce what they represent against others. This would apply to all these checks except the last one to Kunkleman, given February 26. The greatest diligence on his part would have availed him nothing, as there was at no time subsequent to the date of this check sufficient money to pay it.

It is a well known equitable rule that, where one of two innocent parties must suffer a loss because of the act of a third party, the one whose act has made such loss possible must endure it. This rule is peculiarly applicable here. The act of Wray must occasion loss to either appellant or respondents. Respondents had it within their power to

lessen their loss by cashing the checks given them by Wray. They negligently failed to do so, and their failure has made the checks worthless. They must bear the loss they have occasioned, and not thrust it upon appellant.

We find no merit in the other assignments of error as to Kunkleman's claim. In view of the failure to assert error in the findings, we are not disposed to make a critical review of the evidence to ascertain if it sustains the findings. The decree is modified so that Mrs. Hunt's lien will be reduced from $607.75 to $357.75, and Kunkleman's from $363.40 to $228.40. In all other respects, the judgment is affirmed, and the cause remanded for further proceedings as herein indicated. Appellant will recover costs in this court.

DUNBAR, C. J., CHADWICK, CROW, and ELLIS, JJ., concur.