[No. 13455. Department Two. June 16, 1916.]

GEORGE VAUGHAN et al., Respondents, v. L. R. FIFER, Appellant.[1]

LOGS AND LOGGING—LABOR LIENS—LUMBER "AT THE MILL." Lumber manufactured from saw logs was still "at the mill," within the terms of Rem. & Bal. Code, § 1163, entitling laborers thereon to liens, though piled on land close to the mill leased to the purchaser, where by the provisions of his contract, the sale was to be "f. o. b. the mill," evidenced by a bill of sale, the lumber was to be surfaced by the manufacturer and loaded by it in amounts as the purchaser might designate, and final payments to be made upon receipt of invoice and bills of lading issued therefor, none of which acts had taken place prior to the filing of liens.

LOGS AND LOGGING—LABOR LIENS. The right to labor liens on manufactured lumber, under Rem. & Bal. Code, § 1163, would not be lost by reason of the fact that title had passed to a purchaser, where the lumber was still physically "at the mill," and further duties were to be performed by the manufacturer incident to its sale.

LOGS AND LOGGING—LABOR LIENS. Under Rem. & Bal. Code, § 1175, authorizing laborer's liens upon the whole or any part of manufactured lumber, a purchaser of lumber subject to lien is not entitled to a pro tanto reduction of the claims against his lumber from the fact that a considerable portion of the claims could have been satisfied out of other lumber disposed of in bankruptcy proceedings against the manufacturer.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered February 2, 1916, upon findings in favor of the plaintiffs, in an action to foreclose liens, tried to the court. Affirmed.

Walter Metzenbaum and S. H. Kelleran, for appellant.

Albers & Allen, for respondents.

PARKER, J.—The plaintiffs, Vaughan and forty-one others, commenced this action in the superior court for Lewis county seeking foreclosure of liens claimed by them upon certain lumber which by their labor they assisted in manufacturing

[1]Reported in 158 Pac. 93.

while employed by the Baker-May Lumber Company, at its mill at Mays, in Lewis county. The defendant Fifer, doing business as L. R. Fifer Lumber Company, was made a party to the action because of his claim of title to the lumber sought to be foreclosed upon, and because of his claim that the lumber was removed from the mill where manufactured before filing of the plaintiffs' several claims of lien in the office of the auditor of Lewis county. The trial of the case in the superior court resulted in decree of foreclosure in the plaintiffs' favor, from which the defendant has appealed to this court.

That the respondents by their labor assisted in manufacturing the lumber in question while employed by the Baker-May Lumber Company at its mill seems not to be questioned here. Nor is the sufficiency of their claims of lien filed in the office of the auditor of Lewis county questioned as to their form or substance. Each of respondents claims under the provisions of Rem. & Bal. Code, § 1163, reading as follows:

"Every person performing work or labor or assisting in manufacturing saw-logs and other timber into lumber and shingles, has a lien upon such lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer, . . ."

Appellant rests his title to the lumber as against the claims of respondents upon the following contract and the alleged removal of the lumber from the mill in pursuance thereof:

"This agreement, entered into by and between L. R. Fifer, sole trader. doing business as L. R. Fifer Lumber Co., party of the first part, and Baker-May Lumber Co., a corporation, party of the second part, this 7th day of April, 1915.

"Witnesseth, that the party of the first part contracts to purchase from the party of the second part and the party of the second part contracts to sell to the party of the first part, one million two hundred thousand feet dimension No. 1 common lumber, 2x4 to 2x12, 12 to 24 feet in length, at

$6.50, *F. O. B. the mill* of the party of the second part, the same being located at Mays, Washington.

"It is agreed that the width and lengths of said lumber shall be as follows: . . .

"It is agreed that the party of the second part will furnish the same at not less than 150 M. a month and pile the same on Lateral No. 1, SE.¼ of SE.¼ of Sec. 4, Twp. 13 N. Range 4, and mark the piles forthwith, 'Property of L. R. Fifer Lumber Co.,' and *execute a bill of sale for the said lumber as soon as cut,* and the party of the second part agrees *to surface the said lumber and load the same upon the demand of the party of the first part in amounts as designated by the party of the first part,* without any other charge whatsoever.

"It is understood and agreed between the parties hereto that title to the said lumber vests in the party of the first part as soon as the same is piled in the piles as designated heretofore.

"That the party of the first part advances to the party of the second, $3,000, receipt of which is acknowledged by the party of the second part, the same to apply on the lumber manufactured under this contract by the party of the second part and it is specifically understood that the said $3,000 shall apply upon the first lumber manufactured, by the party of the second part to an amount aggregating $3,000 in value. It is agreed that after the said $3,000 is consumed in the payment of lumber so cut the party of the first part will purchase the remainder of said lumber as follows: $4.00 per M. when the lumber is piled as designated heretofore, and the balance of $2.50 per M. is *to be paid upon the receipt of invoice and bills of lading,* . . .

"That the party of the second part further contracts, with his wife, to mortgage to L. R. Fifer an undivided one-half interest in the following described real estate, SE.¼ of Section 14, Twp. 23, Range 6 West, Douglas County, Oregon, the *said mortgage being intended to secure the party of the first part from any loss or damage that may occur from liens upon the said lumber* or any failure to cut the lumber of the grade, quality, or dimensions as designated by the party of the second part, or for any other damage that may arise because of the breach of this contract on the part of the party of the second part. In the event that the party

of the second part is compelled to sue, any recovery he may
obtain by reason of such a suit shall carry with it an attor-
ney's fee of $100 in favor of the party of the second part."

We have italicized the portions of this contract to which
we will presently call particular attention. A few days
prior to the signing of this contract, the mill company leased
to appellant the lateral mentioned in the contract on which
the lumber was to be piled as manufactured. This was the
lateral of the lumber company closest to its mill, it having
other laterals on which it piled its lumber as manufactured
farther away from the mill, and was unquestionably "at the
mill" within the meaning of those words as used in Rem. &
Bal. Code, § 1163 (P. C. 309 § 15), above quoted, unless the
piling of lumber thereon is to be considered a removal of it
from the mill because of the lease of this lateral to appel-
lant. The lumber in question was manufactured between
April 12, and May 25, 1915, on which latter date the mill
ceased to operate because of the insolvency of the company
and its passing into the hands of a receiver appointed by the
Federal court. As the lumber in question was manufactured,
it was piled on the leased lateral, and as each pile was com-
pleted, there was plainly stencilled thereon the words "prop-
erty of L. R. Fifer Lumber Co." At the time the mill ceased
to operate, there was piled and stencilled on the leased lat-
eral some 228,000 feet of lumber. This lumber, it seems, is
substantially all of the lumber at or near the mill now avail-
able to satisfy respondents' liens, though there was other
lumber at the mill which we may assume was subject to their
liens but which lumber has since been disposed of in the
bankruptcy proceedings. No bill of sale was executed by
the lumber company to appellant as provided in the con-
tract. It is not claimed that appellant has ever demanded
that the lumber be loaded upon cars nor that it be surfaced,
nor has appellant waived these required duties of the lumber
company, which are yet to be performed incident to the

sale of the lumber by the lumber company according to the terms of the contract.

The principal contention of counsel for appellant is that this lumber has been removed and was not "at the mill" nor "under the control of" the lumber company at the time respondents filed their liens, within the meaning of Rem. & Bal. Code, § 1163, above quoted. Counsel for appellant call our attention to and rely particularly upon three decisions of this court which we will now notice.

In *Swartwood v. Red Star Shingle Co.*, 13 Wash. 349, 43 Pac. 21, liens of laborers assisting in the production of shingles was involved. The court there found that the shingle company had sold the shingles upon which the plaintiffs were attempting to enforce their liens. The defendant, purchaser from the shingle company, took possession of the shingles, removed them from the mill where manufactured to a shipping warehouse on the railroad about a quarter of a mile from the mill, the shingle company having executed and delivered to the defendant a bill of sale for the shingles, which was duly recorded. There was nothing whatever left for the shingle company to do incident to the sale. Upon these facts, it was held that the shingles were no longer "at the mill" nor "under the control of the manufacturer" and hence no longer subject to labor liens.

In *Judge v. Bay Mill Co.*, 18 Wash. 269, 51 Pac. 378, which is the case most strongly relied upon by appellant, the contract of sale to the defendant purchaser called for delivery of shingles on board a car which was placed upon the railway company's switch near the mill and the mill company loaded the shingles thereon, when the car was closed and sealed and the railway company issued to the defendant purchaser a bill of lading in usual form by the terms of which the railway company was to transport the shingles to the state of Missouri. The car so loaded was left a short time on the switch very close to the mill where the shingles were

manufactured, and so far as its mere physical location was concerned, it might be said that it was "at the mill." It was held, however, that, in view of the mill company having loaded the car, caused it to be closed and sealed, and a bill of lading having been issued to the purchaser of the shingles by the railway company, they were in law no longer "at the mill" nor "under the control of the manufacturer." Here again we have a case where the sale was completed and every act incident thereto required of the mill company was performed.

In *Akers v. Lord,* 67 Wash. 179, 121 Pac. 51, we have a situation not materially different from that involved in the *Judge* case. It was, however, manifestly less favorable to appellant's contention, in that the lumber involved was delivered to the railway company some distance from the mill.

We are constrained to hold that these decisions are not controlling here, in view of the facts of this case. We have seen that, by the terms of the contract relied upon by appellant, his purchase of the lumber was to be evidenced by "bill of sale for said lumber as soon as cut"; the contemplated sale was to be "F. O. B. the mill"; the lumber was to be not only loaded but also surfaced by the lumber company upon demand of appellant in amounts as designated by him; appellant was to receive a mortgage to secure him from "damages that may accrue from liens upon said lumber," and evidently the final invoice and bills of lading to be issued upon the loading of the lumber for shipment were to be the final acts to be performed by the lumber company. These duties to be performed by the lumber company under the contract, not being performed and not being waived by appellant, lead to the conclusion that the sale and delivery of the lumber had not been perfected to that extent that it became removed from the mill in law, so as to prevent the liens of laborers assisting in its manufacture attaching to it.

We have not lost sight of the provision of the contract which declares that the title to the lumber vests in appellant

as soon as the same is piled and stencilled. Recurring to § 1163, however, we find that the mere passing of title as between the mill company and appellant is not necessarily a controlling fact as to respondents' lien rights. The fact remains that this lumber was still physically at the mill, even nearer to the mill than the lumber company's own lumber and that the mill company had further duties to perform incident to the sale of the lumber. In other words, the contract was still executory notwithstanding, as between the lumber company and appellant, the title to the lumber may be regarded as having passed upon its piling upon the leased lateral.

We are of the opinion that, under all the facts shown, the lumber in question was, at the time of the filing of respondents' claims of lien, "at the mill" within the meaning of those words as used in Rem. & Bal. Code, § 1163, above quoted, and that therefore respondents' lien rights attached thereto.

Some contention is made in appellant's behalf that the lien claims of respondents should in any event be reduced in amount because, as counsel claims, a considerable portion of the amounts due respondents could have been satisfied out of other lumber at the mill, which other lumber seems to have been disposed of in the bankruptcy proceedings. This contention, we think, is fully answered by the provision of Rem. & Bal. Code, § 1175, reading as follows:

"Any person who shall bring a civil action to enforce the lien herein provided for, or any person having a lien as herein provided for, who shall be made a party to any civil action, has the right to demand that such lien be enforced against the whole or any part of the saw-logs, spars, piles or other timber or manufactured lumber or shingles upon which he has performed labor . . ."

See, also, *Proulx v. Stetson & Post Mill Co.*, 6 Wash. 478, 33 Pac. 1067; *Grimm v. Pacific Creosoting Co.*, 50 Wash. 415, 97 Pac. 297. It seems quite plain to us that the whole of respondents' lien claims may be enforced against this lum-

ber, though they may have possibly been enforcible against other lumber.

We conclude that the trial court correctly disposed of the rights of the parties and that its judgment and decree must be affirmed. It is so ordered.

MAIN, HOLCOMB, and BAUSMAN, JJ., concur.