[No. 15608.   Department Two.   March 22, 1920.]

J. J. BLEITZ, *Respondent*, v. BRYANT LUMBER COMPANY, *Appellant*.[1]

PRINCIPAL AND AGENT (9, 42)—EVIDENCE OF AUTHORITY OF AGENT —SUFFICIENCY OF EVIDENCE. Whether delivery of logs sold was made to the buyer's agent with authority to receive them, before they were lost in towing, and were in the buyer's possession at the time of the loss, is for the jury, where there was evidence that the buyer authorized a log scaler, who had previously received a raft of logs, to look after the acceptance and towing of the logs, and that he did so.

TRIAL (93)—INSTRUCTIONS—APPLICABILITY TO ISSUES. Upon an issue as to whether logs sold had been delivered to the buyer's agent with authority to receive them ,before they were lost in towing, it is error to instruct the jury in regard to the negligence of the seller, as that was foreign to the issue.

APPEAL (463)—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action for the price of logs, turning upon an issue as to whether they had been delivered and were in the possession of the buyer at the time they were lost, an erroneous instruction as to the seller's negligence is harmless, where by other instructions recovery was made to depend upon the question of delivery.

BILLS AND NOTES (6) — ACCEPTANCE — WRITTEN ACCEPTANCE OF ORDER—NECESSITY. An order for the payment of money due on the

[1]Reported in 188 Pac. 509.

sale of logs does not amount to an assignment of or pass title to the fund unless it is accepted in writing, as required by Rem. Code, §§ 3517 and 3522.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 30, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract, after a trial on the merits. Affirmed.

*Wright, Kelleher & Allen,* for appellant.

*Byers & Byers,* for respondent.

BRIDGES, J.—This was a suit for the value of a raft of sawlogs. The jury returned a verdict for the plaintiff and judgment was entered thereupon. The defendant has appealed.

The facts are substantially as follows: The respondent, plaintiff below, was engaged in a small logging operation near Quilcene, in the state of Washington. His logs were put in the waters of Puget Sound or an arm thereof and there rafted. The appellant, defendant below, was the owner and operator of a sawmill in Seattle, Washington. In order to get the logs from Quilcene, where they were first put in the water, it was necessary to tow them down Puget Sound to market. The appellant purchased these logs to be delivered at Quilcene. There is no dispute concerning the amount of respondent's recovery, if he is entitled to recover at all. Prior to the time in question, the respondent had delivered to the appellant, at Quilcene, his first raft of logs. These had been paid for. The logs involved in this suit are those of a second raft. While they were being towed from Quilcene to appellant's mill, they were lost in a storm. One of the chief questions involved is whether, at the time of the loss, these logs were in charge of respondent or in charge

of appellant. If they were in charge of the former, he cannot recover; but if they were in charge of the latter, it would be liable.

The respondent's testimony was to the effect that one Jackson was appellant's representative, and as such ordered a tug boat to go to Quilcene and there receive delivery of the logs in question and bring them to Seattle. The appellant contends that Jackson had no authority to order the tug boat, control its movements, or accept the logs in question. The respondent testified that, before delivery of the first raft of logs, he had a talk with the manager of appellant, whereby the logs which he was about to put into the water were sold to appellant to be delivered in raft at Quilcene. The appellant agreed to furnish respondent with boom sticks for the purpose of rafting the logs, and made an advance payment of $500. Respondent testified that, at this conversation and after the sale had been agreed upon, appellant's manager said to him:

"I am very busy; if you have any logs ready to go now, you just go to Mr. Jackson with them. He will take care of them. He will attend to the shipping and take care of the whole thing for us. You will not have to bother me about these logs any more."

It appears from other testimony that Jackson was a log scaler at Seattle, and scaled many of the logs purchased by appellant; that he often ordered tug boats for the purpose of towing appellant's logs, and looked after the towing and receiving of the logs. He denied, however, that in this instance he had had anything to do with ordering the tug boat or towing or receiving of the logs in question. Respondent testified that Jackson actually ordered the tow boat, and made arrangements for it to go to Quilcene and get and bring to the appellant the logs involved in this suit. Appellant contends that the respondent's testimony, the ma-

terial part of which is quoted above, fails to show that Jackson had any authority to order the tug boat or to receive this raft of logs. It asserts that Jackson's authority was confined to the first raft. We think, however, there is ample testimony on this question to require the case to be submitted to the jury. The quoted portion of respondent's testimony was a part of a conversation between him and the manager of appellant concerning all the logs which respondent intended to put in the water at Quilcene. At that time, all the logs were sold to appellant and arrangements were made for boom sticks and concerning scaling of the logs; at the same time appellant made an advance payment of five hundred dollars. The conversation was general and concerning all the logs. When the manager told respondent to go to Jackson and said that he would "attend to the shipping and take care of the whole thing for us," it seems clear that it was the intention to authorize Jackson to look after the acceptance and towing of all the logs; particularly is this true when it is remembered that Jackson had ordered the tug for the first raft, accepted the logs at Quilcene, and had them brought to appellant, who paid for them.

It is next complained that the court erred in giving to the jury the following instruction:

"Therefore, you are further instructed, if you are satisfied from the evidence and by a fair preponderance thereof, that the plaintiff delivered to the defendant at Quilcene the tow of logs as stated in the pleadings and these instructions, at the time alleged, and that the master of the tug boat or any of its officers, or employees, were agents of the defendant and were authorized to receive and did receive said tow of logs at Quilcene, as alleged in the pleadings, then it would be your duty to return a verdict in favor of the plaintiff and against the defendant . . . On the other hand, if you are not so satisfied, and you believe that the

plaintiff in removing said logs from Quilcene was acting in his own behalf and directed the removal of said logs by the tug in question, and that there was no one acting on behalf of the defendant who was authorized by the defendant to take, receive and remove said logs, and that the plaintiff himself was guilty of carelessness and negligence in failing to take such reasonable precautions for the safety of said tow as a reasonably prudent person would take under like or similar circumstances, and on account thereof the tow was lost, then the plaintiff cannot recover, and in that case your verdict should be for the defendant.''

Particular complaint is made of that portion of this instruction wherein the court instructed the jury with reference to the negligence and carelessness of the plaintiff. Clearly this portion of the instruction was erroneous, because it was foreign to the issues involved; but it does not necessarily follow that the error was prejudicial. The chief question before the jury was whether or not the logs, when lost, had been delivered to the appellant and were in its charge. If so, then respondent's negligence could have nothing to do with the question; but, if they were still owned by and were in charge of the respondent, he, of course, could not recover because the loss was his own. In neither instance could the question of negligence of respondent or anybody else be involved. The court's instructions were elaborate and otherwise clear. Time and again the jury was told that, if the respondent had not delivered the logs to appellant but was in charge of them through his own tug, then he could not recover; but that, if the logs had been delivered to appellant and the tug boat was acting for it, then it would be liable. It is very clear to us that the fact that the court in this one instruction, covering the same ground he had covered in a number of other instructions, made mention of the negligence of the respondent, could not have

misled the jury. The error could not have been prejudicial to appellant.

During the trial, there appeared in evidence a letter from the Metropolitan Bank of Seattle to the appellant, enclosing an order given by the respondent to the bank, which order was addressed to the appellant, signed by respondent, and reads as follows: ''Please remit to the Metropolitan Bank proceeds of next boom of logs from me.'' It is earnestly argued by appellant that, by this order, the respondent assigned to the bank the money which he now seeks to recover and that only the bank could maintain an action therefor. On the other hand, the respondent contends that the so-called order was nothing more than a request on the appellant to pay to the bank for his use and benefit, and that it did not have the effect of assigning the money to the bank. We do not find it necessary to decide this controversy. If we assume that the order was on its face sufficient to amount to an assignment to the bank, it could not have that effect unless it was accepted in writing by the appellant. Section 3516, Rem. Code, defines a bill of exchange as follows:

''A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer.''

Section 3517 of the same volume provides:

''A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same.''

Section 3522 provides that the acceptance must be in writing and signed by the drawee. There was no proof that appellant had accepted this order.

The case of *Frederick & Nelson v. Spokane Grain Co.*, 47 Wash. 85, 91 Pac. 570, was based on an order reading as follows:

"August 10, 1905. Frederick & Nelson, City. Gentlemen:—Please pay to Spokane Grain Company at the end of each month the amount due me for boarding your horses. Their receipt shall serve as a receipt from me. Pay them what will be due me for the month of August. Also pay them all moneys that will be due me each successive month until otherwise notified by the Spokane Grain Company. Yours very truly, Club Stables, by James Madsen, Proprietor."

This order was not accepted in writing by Frederick & Nelson, and the court, commenting on that question, said:

"The appellant contends that the order set out above was not a draft or bill of exchange the acceptance of which is required to be in writing, but was an order drawn on a particular fund, covered the amount of the fund drawn upon, and amounted to an equitable assignment *in praesenti* of the fund, notwithstanding it had not been accepted by the drawee, and some authorities are cited which apparently sustain this position. But our statute seems to place the question beyond controversy, for it provides:  [the court then quotes §§ 3516 and 3517, Rem. Code]. These sections are plain, and it follows therefrom that the mere delivery of the order by Madsen to the Spokane Grain Company did not operate as an assignment of the funds in the hands of Frederick & Nelson, nor would Frederick & Nelson be liable on the order until it was accepted by them in writing."

The case of *Plaza Farmers' Union Warehouse & Elevator Co. v. Ryan*, 78 Wash. 124, 138 Pac. 651, involved this question. The order there discussed was made to W. F. Binge and signed by Wm. Ryan, and read as follows:  "Dear Sir, Pay to the order of State Bank of Spangle, seven hundred forty-nine and 92-100 Bal. threshing acct."  The court said:

''The sole question presented for our consideration is as to the legal effect of the alleged acceptance. The order did not operate as an assignment, but constituted an inland bill of exchange not binding upon the garnishee defendant until and unless he accepted it in writing.''

See, also, the following cases: *Nelson v. Nelson Bennett Co.,* 31 Wash. 116, 71 Pac. 749; *Wadhams v. Portland, Vancouver & Yakima R. Co.,* 37 Wash. 86, 79 Pac. 597; *Sheets v. Coast Coal Co.,* 74 Wash. 327, 133 Pac. 433.

The judgment is affirmed.

HOLCOMB, C. J., FULLERTON, TOLMAN, and MOUNT, JJ., concur.