[No. 18176.   Department One.   November 9, 1923.]

# E. N. Steele, *Respondent*, v. W. G. Hellar *et al.*, *Appellants*.[1]

Logs and Logging (3)—Contracts—Rental of Equipment— Liability—Evidence—Sufficiency. The owner of timber, logged for him by an independent contractor, cannot be held liable on the contractor's written contract for the rental of a logging engine, to which he was not a party, where there was no evidence that he ever agreed to pay the rental and did not accept the contract as an order for payment of the rental, as required by Rem. Comp. Stat., § 3522, in order to create a liability.

Same (24)—Lien—Agent of Owner—Personal Liability of Owner—Statutes. Rem. Comp. Stat., § 1162, of the logging lien act, giving a lien to persons furnishing services, "whether such work, labor or services" were performed at the instance of the "owner or his agent," does not make the logger, under contract with the owner, the agent of the owner for the purpose of establishing a personal judgment against the owner on the logger's contract for services rendered by others, who may have had valid liens on the logs.

Same (22)—Lien—Services of Engine—Statutes—Construction. A lien on logs may be claimed for the rental of a logging engine used to draw the logs by cable to landing places and loading them, under Rem. Comp. Stat., § 1162, giving a lien to the owner of a logging engine used in hauling the logs "from one place to another in this state."

Same (35)—Notice of Lien—Time for Filing. A notice of lien on logs for the rental of a logging engine is timely if filed within thirty days after the close of the rendition of the services, as provided by Rem. Comp. Stat., § 1168, notwithstanding the particular portion of the logs sought to be subjected to the lien were put into the water more than thirty days before the filing of the lien, where the service was continuous and under one contract for the rental.

Appeal from a judgment of the superior court for Mason county, Wright, J., entered March 28, 1923, upon findings in favor of the plaintiff, in an action on contract and to foreclose a logger's lien, tried to the court. Affirmed in part and reversed in part.

[1]Reported in 219 Pac. 879.

*Hayden, Langhorne & Metzger,* for appellants.

*Troy & Yantis,* for respondent.

PARKER, J.—This action was commenced in the superior court for Mason county by the plaintiff, Steele, against the defendants, Whitlock, Hellar, and Puget Mills Company, seeking recovery of a personal judgment against Whitlock and Hellar for the rental of a donkey logging engine owned by Steele and used by Whitlock in logging certain timber belonging to Hellar; seeking foreclosure of a lien claim of Steele for the rental of the engine upon logs hauled and moved by Whitlock with it in the logging operations; and seeking, in the alternative of the foreclosure of Steele's lien claim, in the event the logs cannot be physically subjected thereto, a personal judgment against the Puget Mills Company by way of damages for the eloignment of the logs by that company. It appearing that the Puget Mills Company had purchased the logs from Hellar and converted them into lumber so as to render it impossible to identify and physically subject any of them to foreclosure of Steele's lien claim, the controversy became one of Steele's right to personal judgment for damages against the Puget Mills Company, as well as Steele's right to personal judgment against Hellar; no contention being made against Steele's right to personal judgment against Whitlock. The cause proceeded to trial in the superior court, sitting without a jury, and resulted in findings and personal judgment being made and rendered in favor of Steele and against each of the defendants, Whitlock, Hellar, and the Puget Mills Company, for the sum of $1,550 and costs. The judgment as against Whitlock and Hellar was sought and rendered upon the theory that their obligation was contractual; that is, that they had both contracted to pay

Steele the rental of the engine; and against the Puget Mills Company upon the theory that its obligation arose in favor of Steele as damages resulting to him by its eloignment of the logs. From this disposition of the cause, Hellar and the Puget Mills Company have appealed to this court.

During the period in question, Hellar was the owner of a quarter section of timber land near Hoodsport, in Mason county. On about April 1, 1921, Hellar entered into an agreement with Whitlock by which Whitlock was to log and remove the timber from this land and place the logs in the water at Hoodsport, ready for market. Just what all the terms of this agreement were, we are not certainly advised by the record before us, though we think it can be readily seen therefrom that it constituted the making of Whitlock an independent contractor for the logging of the timber and the placing of the logs in the water at Hoodsport, for which Hellar was to pay $8 per thousand feet. This agreement being made, but not reduced to writing, Whitlock entered into a written contract with Steele for the renting of the donkey logging engine owned by Steele here in question; it being understood that the engine was to be used by Whitlock in his logging operations in removing Hellar's timber, which operations, it was contemplated, would take about seven months' time and the continuous use of the engine during practically the whole of that period. The agreed rental for such use of the engine is stated in the contract to be $300 per month. One of the stipulations of the contract is as follows:

"W. G. Hellar, owner of the timber, is to pay for the use of the donkey engine out of any funds due party of the second part herein [Whitlock] and this contract constitutes an order upon him for the amount due party of the first part [Steele] under this contract and to be

paid on the 10th of each month for the previous month's rental.''

This contract contains no other stipulations of any moment in our present inquiry. Hellar was not a party to this contract, though, of course, he might have become such to the extent of becoming an acceptor of the order upon him for the payment of money to Steele for Whitlock. But this we are convinced he never did, further than to make some payments to Steele for Whitlock upon the rental of the engine unaccompanied by any promise to Steele, express or implied, to make additional payments of that nature for Whitlock. On October 17, 1921, there remained unpaid upon the rent of the engine, according to the contract between Whitlock and Steele, $1,150, at which time Steele filed, and caused to be placed of record in the office of the auditor of Mason county, his notice of claim of lien for such unpaid rent upon about 300,000 feet of logs which had been by Whitlock logged from the land and placed in the water at Hoodsport. On December 2, 1921, there remained unpaid upon the rent of the engine, according to the contract between Whitlock and Steele, $1,550, at which time Steele filed, and caused to be placed of record in the office of the auditor of Mason county, his additional notice of claim of lien for such unpaid rent upon about 125,000 feet of additional logs which had been by Whitlock logged from the land and placed in the water at Hoodsport. Thereafter, all of these logs were sold by Hellar to the Puget Mills Company, and were removed and converted into lumber by that company, so as to render impossible their identification and render impossible the physical subjecting of them to the foreclosure of Steele's lien claim. The trial court found the reasonable value of the logs so removed by the Puget Mills Company to be $3,388, which, it will

be noticed, was approximately twice the amount of Steele's lien claim. Other facts will be noticed as may seem necessary in our discussion of the several questions presented.

It is contended in behalf of Hellar that in no event is he personally liable to Steele for rent of the engine. Counsel for Steele argue that Hellar, in his contract with Whitlock, agreed to pay the rent of the engine and deduct the same from the amount to become due Whitlock on the logging contract. This presents a question of fact which we are wholly unable to decide in favor of Steele. We have noticed that the terms of that contract are not before us other than in a general and rather loose way. It is true that there is in evidence a copy of a tentative form of contract between Hellar and Whitlock looking to the logging of the land by Whitlock for Hellar which, it was apparently expected, would be signed by them; but we have no evidence that it was ever signed. We are quite clear at all events that Hellar never made any agreement with Steele to make any such payments or to in any way become personally responsible to Steele for the rent of the engine; nor did Hellar ever accept the order upon him embodied in the contract between Steele and Whitlock, not even orally, much less in writing as required by § 3522, Rem. Comp. Stat. [P. C. § 4203]. *Sheets v. Coast Coal Co.,* 74 Wash. 327, 133 Pac. 433; *Bleitz v. Bryant Lumber Co.,* 110 Wash. 437, 188 Pac. 509.

Contention is made in behalf of Steele that, in the making of the contract between him and Whitlock for the rent of the engine, in contemplation of it being used in the logging of Hellar's timber, Whitlock was, in legal effect, acting for Hellar. The only language of our logging lien statutes suggesting that a contractor, such as Hellar was, becomes the agent of the owner is that found near the conclusion of § 1162, Rem. Comp.

Stat. [P. C. § 9679] following the giving of lien rights
to persons furnishing service, as follows:

", . . . whether such work, labor or services was
done, rendered or performed at the instance of the
owner of the same [land] or his agent."

This language, it may be conceded, contemplates the
making of the contractor the agent of the owner for the
purpose of establishing lien rights in others for ser-
vices rendered by them to the contractor in the logging
operations; but that is quite a different matter from
the making of such a contractor the general agent of
the owner for the purpose of establishing a personal
liability of the owner for services rendered to the con-
tractor by others in the logging operations. There is
nothing in our logging lien statutes touching the sub-
ject of a personal liability of the owner as such. Coun-
sel for Steele cite and rely upon the decision of this
court in *O'Brien v. Perfection Pile Preserving Co.,* 49
Wash. 395, 95 Pac. 489, especially the language of that
decision reading as follows:

"We think that a person getting out logs and piling
under a contract with the owner is an agent within the
meaning of this statute."

This language, viewed unqualifiedly apart from the
facts of that case, may seem to lend support to coun-
sel's general agency theory. It appears, however, in
that case that the owner was held as an eloigner of the
logs, he having removed them and rendered it physic-
ally impossible to subject them to the claimed lien. So,
after all, the question of agency there decided, and the
only necessary question to be decided, was as to the
agency of the contractor for the owner for the purpose
of establishing lien rights of those rendering services
in the logging operations at the instance of the con-
tractor. In other words, the owner in that case was

not held because he was personally liable as principal-
with the contractor by virtue of the contractor's agree-
ment with his servants and others rendering him
service in the logging operations; but the owner was
manifestly held liable in damages as an eloigner; and,
to so hold him, it was necessary that there be a valid
lien in favor of those whose claimed lien rights were
defeated by the eloignment of the owner. The decision
is quite brief, and is not as clear in its enunciation of
the law as might be desired, but we think this is in sub-
stance what it means. No case has come to our notice
holding that the agency of the contractor for the owner
is anything more than an agency to make a contract
for services which will support lien claims, not per-
sonal claims, as against the owner. We conclude that
Hellar is not personally liable to Steele for any portion
of the rent of the engine, and that the trial court erred
in rendering a personal judgment against Hellar. We
have been careful to notice that there is no contention
that Hellar should be held for damages as an eloigner
of the logs.

Contention is made in behalf of the Puget Mills
Company that, since it can be rendered liable to Steele
as an eloigner of the logs only upon the theory that
Steele had a valid lien upon the logs, it is not personally
liable to Steele because such use of the engine as is
here involved does not give rise to a lien right as
against the logs. Section 1162, Rem. Comp. Stat. [P.
C. § 9679], defining such lien rights, reads as follows:

"Every person performing labor upon, or who shall
assist in obtaining or securing sawlogs, spars, piles,
cordwood, shinglebolts, or other timber, and the owner
or owners of any tugboat, or towboat, which shall tow
or assist in towing, from one place to another within
this state, any sawlogs, spars, piles, cordwood, shingle-
bolts, or other timber, and the owner or owners of any

team or any logging engine, which shall haul or assist in hauling from one place to another within this state, any sawlogs, spars, piles, cordwood, shingle-bolts, or other timber, and the owner or owners of any logging or other railroad over which sawlogs, spars, piles, cordwood, shingle-bolts, or other timber shall be transported and delivered, shall have a lien upon the same for the work or labor done upon, or in obtaining, or securing, or for services rendered in towing, transporting, hauling, or driving, the particular sawlogs, spars, cordwood, shingle-bolts, or other timber in said claim of lien described, whether such work, labor or services was done, rendered or performed at the instance of the owner of the same or his agent. The cook in a logging camp shall be regarded as a person who assists in obtaining or securing the timber herein mentioned.''

It is argued that, since the engine was used only to draw the logs by cable from where the trees were felled to suitable places on the land for loading them on large motor trucks, and then in turn used in loading the logs on the trucks, this did not constitute "hauling from one place to another within this state" within the meaning of that section. It seems to us this is a too narrow construction to give to this statute. Our decision in *Hunt v. Panhandle Lumber Co.*, 66 Wash. 645, 120 Pac. 538, we think, lends support to this conclusion. It seems clear to us that it must be held that the services of a logging engine such as is here involved gives rise to a lien claim against the logs.

Contention is made in behalf of the Puget Mills Company that the contract rental of the engine is excessive in amount and above the reasonable value of its use, even though it were actually used continuously during the whole of the time in question; it being further contended that the engine was not used by Whitlock continuously, but intermittently, with some considerable periods intervening, for which no lienable

rental charge should be allowed. These contentions present questions of fact which the court in effect decided in favor of Steele. A careful review of the evidence convinces us that we would not be justified in determining otherwise than the lower court did on these questions of fact. We are assuming for the sake of argument that it was a question of reasonable value of the use of the engine rather than the actual contract rental that should govern the amount of Steele's lien right and hence his recovery from the Puget Mills Company, as counsel for the Puget Mills Company insist is the law under our decision in *State Bank of Seattle v. Ruthe,* 90 Wash. 636, 156 Pac. 540.

Contention is made in behalf of the Puget Mills Company that there was not sufficient proof of the value of the logs taken by it to warrant recovery as against it. Again, we say a careful review of the evidence convinces us that the court was well supported by the evidence in its finding that the reasonable value of the logs was more than the rental of the engine remaining due to Steele.

Contention is made in behalf of the Puget Mills Company that the first lien notice was not filed within the time prescribed by § 1168, Rem. Comp. Stat. [P. C. § 9685], which reads in part as follows:

"Every person within thirty days after the close of the rendition of the services, or after the close of the work or labor mentioned in the preceding sections (1162, 1163) claiming the benefit hereof, must file for record with the county auditor . . . a claim containing a statement of his demand . . ."

The argument is in substance that, because the logs against which that lien notice was filed had been put into the water more than thirty days before the filing of that lien notice, therefore Steele's lien right against those logs had ceased. It seems to us this contention

is answered by the early decision of this court in *Overbeck v. Calligan,* 6 Wash. 342, 33 Pac. 825, where a similar contention was made against the alleged timely filing of a lien notice. Judge Dunbar, speaking for the court, answered such contention as follows:

"It is true there were two booms of logs, and that more than thirty days had elapsed since the labor on the logs in one boom had been performed. But there is nothing in the statutes making a division of the logs into booms, or recognizing booms in any way as affecting the interests of the laborers. These claimants were not employed to work on any particular boom, as men are employed to work on a particular house or structure. Generally men are employed in logging camps to work by the month or by the season. Booms may be large or small. One might be prepared every month, or every week, or possibly every day. The statute provides that the claimant shall have thirty days to file his notice of lien—from when? Not thirty days from the time the boom is completed, but from the time the services rendered in securing the logs ends. We have no doubt that some inconvenience may arise from this construction of the law, but any other construction will render the logger's lien practically inoperative, and logically force him to keep a surveillance over every particular log which he cuts, and be at the expense of filing a lien every thirty days. The division of logs into booms is purely arbitrary, and such division, in the absence of any law providing for it, should not affect or restrict the claimant's right of lien."

Our attention is called to the difference in the language of § 1162, Rem. Comp. Stat., from that of § 1941 of the Code of 1881, which was the controlling statute at the time of the rendering of that decision. That section then read as follows:

"Every person performing labor upon, or who shall assist in obtaining or securing sawlogs, spars, piles or other timber, has a lien upon the same for the work or

labor done upon, or in obtaining or securing the same, whether such work or labor was done at the instance of the owner of the same or his agent.''

It is true this section does not contain the words which we find in the concluding portion of § 1162, ''. . . the particular sawlogs . . . in said claim of lien described, . . .'' but it did contain the words ''every person . . . who shall assist in securing sawlogs . . . has a lien upon the same for the work or labor done upon or securing the same.'' It seems to us that the above quoted language from the *Overbeck* case is a plain holding that the lien awarded is not severable when it is claimed as the result of one continuing service. It is to be noted that by the provisions of § 1166, Rem. Comp. Stat. [P. C. § 9683], the lien right is for services ''for a period of eight calendar months, or any part thereof next preceding the filing of the claim,'' and that by the provisions of Rem. Comp. Stat., § 1168 [P. C. § 9685], such lien claim may be effectually filed within thirty days after the close of the rendition of the services. The decisions in *Proulx v. Stetson & Post Mill Co.*, 6 Wash. 478, 33 Pac. 1067, and *Grimm v. Pacific Creosoting Co.*, 50 Wash. 415, 97 Pac. 297, we think, lend further support to this conclusion.

Some further contentions are made involving technical questions of pleading, but we think they are so far from affecting the substantial rights of the parties or the merits of the case as to not call for serious consideration. We are of the opinion that the judgment as against Hellar must be reversed, and that the judgment as against the Puget Mills Company must be affirmed. It is so ordered.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.