[No. 21804. Department Two. September 5, 1929.]

JAMES SINCLAIR, *Respondent*, v. HEDLUND LUMBER & MANUFACTURING COMPANY, *Appellant*, R. C. DALY, *Defendant*.[1]

[1]Reported in 280 Pac. 82.

*Davis, Heil & Davis,* for appellant.

*W. H. Jackson,* for respondent.

PARKER, J.—The plaintiff, Sinclair, a logger lien claimant, and as assignee of eight other logger lien claimants, sought, by this action in the superior court for Ferry county, recovery for labor performed by himself and assignors in obtaining and securing sawlogs as employees of the defendant Daly; the foreclosure of their respective liens for such labor in so far as such logs had not lost their identity; and recovery of damages from the defendant Hedlund Company, for its eloignment of the larger portion of the logs, which rendered that portion impossible of identification and hence impossible of being subjected to the payment of the liens.

Trial upon the merits in the superior court resulted in findings and judgment awarding to the plaintiff a personal judgment against the defendant Daly, which was, in a small measure, satisfied by sale of the small portion of the logs which had not lost their identity; and a personal judgment against Hedlund Company in the sum of $2,612.26, as damages suffered by them by its eloignment of the remainder of the logs. From this disposition of the case in the superior court, the Hedlund Company has appealed to this court. Daly has not appealed.

Our problem is as to the Hedlund Company's liability to Sinclair in damages for eloignment of the logs, as adjudged by the trial court.

The controlling facts are not seriously in dispute, and may be summarized as follows: On May 21, 1927,

the Hedlund Company owned the standing timber on a 320-acre tract of land in Ferry county. On that day, the Hedlund Company entered into a contract with Daly by which he was, as an independent contractor, to perform

". . . the work of cutting, logging and hauling the merchantable yellow pine timber from said tract and deliver the same on skids and rollways along the railroad known as Hedlund Spur."

It was understood that the amount of timber to be so logged would be approximately 2,000,000 feet, and that the performance of the contract by Daly would be completed by December, 1927. Daly was to pay "all costs in connection with the operations up to and including the placing of said logs at the railroad;" and was to be paid by the Hedlund Company, as compensation therefor, $8.50 per thousand feet. Daly promptly commenced the work, carrying his contract to completion on about December 1, 1927, employing Sinclair and his assignors at such labor in connection therewith as entitled each of them to a lien upon the logs for wages.

The commencement of their several employments was on and between May 23 and November 15, 1927. Their several employments were continuous and terminated on and between November 11 and November 30, 1927. On July 2, 1927, the Hedlund Company commenced shipping the logs, in shipments of from 7,000 to 12,000 feet, to their mill, which they continued to do until December 11, 1927; there being thirty-three of such shipments made with some degree of interval regularity. As the shipments arrived at the mill, the logs were so disposed of by the Hedlund Company that their identity became lost. On or between December 7 to 10, 1927, Sinclair and his assignors each caused to be filed in the office of the auditor of Ferry county, in

due form, notice of his claim of lien against the logs for the balance due him for labor performed in obtaining and securing them. This, it will be noticed, was within thirty days after the close of the rendition of the services of each lien claimant, and within eight months following the commencement of the employment of each lien claimant. On December 17, 1927, all of the eight lien claimants, other than Sinclair, assigned their liens and claims to him. Thereafter, the Hedlund Company refusing, upon demand, to recognize any liability for payment of the lien claims or any portion thereof, Sinclair commenced this action on December 24, 1927, which resulted in final judgment on September 14, 1928, as above noticed.

It is not contended that the personal judgment against Daly in favor of Sinclair is of any value. The amount of logs eloigned by the Hedlund Company was in value sufficient to satisfy the balances due upon all the lien claims, if physically capable of being subjected thereto. We shall proceed as though all the logs were eloigned before the filing of the lien notices, there being only a small portion eloigned thereafter.

Counsel for the Hedlund Company, referring to their formal assignments of error, state in their brief that,

"They can all be discussed together, in answer to this question: Did the transportation of logs by appellant company to its mill, prior to the time the claimants ceased labor, constitute an impairment of their lien rights? We contend that this question must be answered in the negative."

Our statute relating to liens upon logs, in so far as necessary to here quote, referring to sections of Remington's Compiled Statutes, reads as follows:

"Section 1162 [as amended by Chapter 10, Laws of 1923, p. 11.] Every person performing labor upon or

who shall assist in obtaining or securing saw logs, . . . shall have a lien upon the same for the work or labor done upon, or in obtaining or securing, . . . the particular saw logs, . . . in said claim of lien described . . ." (Rem. 1927 Sup., § 1162.)

"§ 1166. The person rendering the service of [or] doing the work or labor named in sections 1162 and 1163 of this chapter is only entitled to the liens as provided herein for services, work or labor for the period of eight calendar months, or any part thereof next preceding the filing of the claim, . . ."

"§ 1168. Every person within thirty days after the close of the rendition of the services, or after the close of the work or labor mentioned in the preceding sections (1162, 1163) claiming the benefit hereof, must file for record with the county auditor of the county in which such sawlogs, spars, piles and other timber were cut, . . . a claim containing a statement of his demand. . . ."

"§ 1175. Any person who shall bring a civil action to enforce the lien herein provided for, . . . has the right to demand that such lien be enforced against the whole or any part of the sawlogs, . . . upon which he has performed labor or which he has assisted in securing or obtaining, . . . during the eight months next preceding the filing of his lien, . . ."

"§ 1181. Any person who shall eloign, injure or destroy, or who shall render difficult, uncertain or impossible of identification any sawlogs, spars, piles, shingles or other timber upon which there is a lien as herein provided, without the express consent of the person entitled to such lien, shall be liable to the lien-holder for the damages to the amount secured by his lien, and it being shown to the court in the civil action to enforce said lien, it shall be the duty of the court to enter a personal judgment for the amount in such action against the said person, provided he be a party to such action, or the damages may be recovered by a civil action against such person."

The argument is, in substance, that, because the removal and losing of identity of the logs by the acts of the Hedlund Company occurred before any of the lien

claimants filed notice of his claim in the office of the auditor of Ferry county, as required by Rem. Comp. Stat., § 1168, there was not, at the times of such removal of the logs, any existing lien of any of the claimants to be impaired by such removal, within the meaning of § 1181. This is rested particularly upon the language therein, "upon which there is a lien," meaning, as it is argued, a lien perfected by filing, as required by statute; and upon the language of the preceding sections, giving, as it is argued, only a right to claim a lien, which does not become a lien, within the meaning of § 1181, until notice thereof is filed, as required by statute. The language of the lien right mentioned in the preceding sections is, in § 1162, "shall have a lien upon the same . . . in said claim of lien described;" is in § 1166, "entitled to the liens;" and is, in § 1175, "lien herein provided for."

Reading all of these statutory provisions together, they all being a part of one act, it seems to us that the words, "upon which there is a lien," in § 1181, mean all lien rights existing prior to, as well as after, the timely filing of notice of lien, as required by statute; that is, that an eloignment prior to the filing of lien notice subjects the eloigner to damages the same as an eloignment thereafter. Seemingly, an eloignment renders the eloigner liable in damages only for logs eloigned by him upon which labor had been performed during eight months immediately preceding the filing of lien notice upon the logs. However, we have seen that the eloignments committed by the Hedlund Company here in question all occurred well within eight months next preceding the filing of all of the lien claims. We conclude that the Hedlund Company is liable in damages as an eloigner of the logs to the full extent of the amount of the unpaid balances remaining due to the several lien claimants and now by assign-

ments due to Sinclair. Our decisions in *Steele v. Hellar,* 127 Wash. 140, 219 Pac. 879, and *Davis v. Ship Lumber Mill Co.,* 132 Wash. 167, 231 Pac. 937, lend support to this conclusion.

Some contention is made rested upon the fact that a considerable portion of the logs were removed by the Hedlund Company prior to some of the lien claimants commencing to work for Daly in the logging operations; and that such claimants did not have any lien right as against such logs. This might possibly present a question of the marshaling of the several lien claims as against the several shipments, treating the several shipments as several eloignments, if these lien rights had not all been merged in one ownership by assignment to Sinclair. However, it fairly appears from the evidence that even a proper marshaling of the lien claims and log shipments, as between the original claimants, would have resulted in all lien claims being satisfied. So, there was no prejudice to the rights of the Hedlund Company in the trial court's ignoring these possible relative rights of the original lien claimants. The following of our decisions, though not directly in point, lend support to this conclusion: *Overbeck v. Calligan,* 6 Wash. 342, 33 Pac. 825; *Proulx v. Stetson & Post Mill Co.,* 6 Wash. 478, 33 Pac. 1067; *McPherson v. Smith,* 14 Wash. 226, 44 Pac. 255; *Grimm v. Pacific Creosoting Co.,* 50 Wash. 415, 97 Pac. 297.

The judgment is affirmed.

MILLARD, FRENCH, MAIN, and BEALS, JJ., concur.