[No. 18556. Department One. September 23, 1924.]

W. De GOOYER *et al., Respondents,* v. NORTHWEST TRUST
& STATE BANK, *Defendant,* NORTHWESTERN FRUIT
EXCHANGE, *Appellant.*[1]

AGRICULTURE (5)—LIEN ON CROPS—RIGHT TO LIEN—STATUTES—
CONSTRUCTION. One who labors on a commercial apple orchard in
pruning, and spraying the trees and cultivating and irrigating the
ground, cannot claim a lien on the apple crop, under Rem. Comp.
Stat., § 1188, giving a general lien to any person who shall labor
upon any farm or land in tilling the same or in sowing or harvest-
ing or threshing any grain or securing or housing any crop or
crops sown, raised or threshed thereon; since that act was intended
to relate to field crops; in view of the later act, Id., § 1131-1 *et seq.,*
giving orchard workers a lien on the orchard or land, rather than
on the crop (TOLMAN, J., dissenting).

Appeal from a judgment of the superior court for
Yakima county, Gilbert, J., entered September 5, 1923,
in favor of the plaintiffs, in an action to foreclose la-
borer's liens, tried to the court. Reversed.

*Kerr, McCord & Ivey,* for appellant.
*Harcourt M. Taylor,* for respondents.

MACKINTOSH, J.—The respondents worked on an ex-
clusively commercial apple orchard, in pruning and
spraying the trees, picking up brush and in cultivating
and irrigating the ground on which the trees grew, and
now claim a lien on the apples grown thereon, under
§ 1188, Rem. Comp. Stat. [P. C. § 9666], the general
farm laborers' act giving a lien upon crops. This
section reads as follows:

"Any person who shall do labor upon any farm or
land, in tilling the same or in sowing or harvesting
or threshing any grain, as laborer, contractor, or other-
wise, or laboring upon, or securing or assisting in se-

[1]Reported in 228 Pac. 835.

curing or housing any crop or crops sown, raised, or threshed thereon during the year in which said work or labor was done, such person shall have a lien upon all such crops as shall have been raised upon all or any of such land, for such work or labor.     .     .     ."

The act does not in terms refer to pruning, spraying, irrigating, cultivating, picking or packing apples or any other fruit, and it is contended by the appellant that the act creates no lien in favor of respondents or those similarly situated, arguing that fruit trees are not harvested or threshed within the meaning of the act; that apples are not grain; that apple orchards are not tilled, and that apples are not secured or housed, and that apple crops are not sown, raised and threshed.

Statutes creating liens are in derogation of the common law and are to receive a strict construction. *Tsutakawa v. Kumamoto,* 53 Wash. 231, 101 Pac. 869, 102 Pac. 766. Their operation will not be extended for the benefit of those who do not clearly come within the terms of the act. It is true that § 1209, Rem. Comp. Stat. [P. C. § 9665b], provides that the lien laws shall be liberally construed with the view to effecting their object. This means that when it has been determined that persons come within the operation of the act it will be liberally applied to them.

This act, as has been said by the court in *Myers v. Tuval,* 122 Wash. 8, 209 Pac. 1087, and *Hubbel v. Cantonwine,* 123 Wash. 328, 212 Pac. 176, is a perplexing one, and we repeat here that it seems to us that legislative action in clearing away some of the uncertainties in it would be a great advantage.

It becomes necessary to analyze the act to determine therefrom what the legislature meant. Before doing so we are to remember that, at the time of the enactment of this statute in the form in which it now ap-

pears, in 1891, the exclusively commercial orchard industry as it is now known did not exist in this state. There were very few, if any, tracts of land devoted exclusively to the growing of fruit. The development of this now great industry had not then noticeably begun, and it is probable that the legislature in 1891 did not have in mind the creation of any lien in favor of orchard workers. That this is true is further evidenced by the fact that in 1917, Chap. 11, p. 38, Laws of that year, an act was passed which gave a lien to any person who does any labor upon any orchard:

"Any person or corporation who shall do or cause to be done any labor upon any orchard or orchard lands, in pruning, spraying, cultivating and caring for the same, at the request of the owner thereof, or by his agent, shall have a lien upon such orchard and orchard lands for such work and labor so performed." (Section 1131-1 et seq., Rem. Comp. Stat.) [P. C. § 9672.]

It will be noticed that that act gives a lien upon the orchard itself and not upon the crop. This act was probably passed in view of the decision of this court in *Howe v. Myers,* 94 Wash. 563, 162 Pac. 1000, L. R. A. 1917D 349, where the plaintiff had attempted to claim a lien on an orchard for work done in cultivating and caring for it. The giving of a lien to horticultural workers upon the land upon which the orchard grows and a lien to other agricultural laborers upon the crop itself, under § 1188, *supra,* would seem to be based on a fundamentally sound reason. It is well known that fruit crops are perishable and cannot remain indefinitely in storage, but must be handled promptly, and to tie them up with liens would probably result in a loss, not only to the owner, but to any person having done any work in their production; whereas, grain crops, to which the statute was originally intended to be con-

fined, are crops upon which liens could be given without injury to anyone, for they may be kept for a considerable time without any loss in their physical properties, and thus amply secure both the owner and the person who aided in harvesting them. The legislature thus gives security to both classes of workers; to the farm laborers it gives as security the crops which are easily marketable and subject to storage; and to the orchard worker it gives a lien, not upon the perishable crop, but upon the orchard itself, which is a permanent and more valuable security.

Respondents advance an argument directed to the grammatical construction of § 1188, *supra,* and support it with an interesting diagram analyzing the grammar of the statute. The question of grammatical construction in the interpretation of statutes is one long since settled by the courts.

"Admitting in a grammatical construction these words did signify as the other side would have it, yet the Judges ought to adjudge thereof, according to the most natural sense of them in common understanding; and that it may be so done    .    .    .    see *Talbot's Case,* 32 Eliz. in Banco Regis, in which after the Judges had conferred in the court with divers learned scholars touching the grammatical construction of a word used in a conveyance, they afterwards, notwithstanding, did waive the grammatical construction, and adjudged the word to signify in law according to the common sense." The Reporters Wallace, p. 238.

See, also, Noy's Reports (K. B. C. P., 1 Eliz-25 Car. 1. 1559-1649).

So here, in the light of our previous decisions and the common meaning of the statute, we hold its application to "field crops;" crops, that is, that are sown, raised and threshed, or as potatoes, are planted or sown and raised.

The respondents had no lien under § 1188, *supra*, and the only lien they could have asserted was through § 1131-1, Rem. Comp. Stat. [P. C. § 9672] (Laws 1917, ch. 110, p. 410), if they were so situated as to take advantage of it.

The judgment is reversed and the cause dismissed.

MAIN, C. J., PARKER, and HOLCOMB, JJ., concur.

TOLMAN, J. (dissenting)—I cannot concur in the narrow construction which has been placed upon the statute. The intent is clear to protect all who labor upon any farm or land in the process of making a crop, and it is immaterial what that crop is or whether it grows on stalk, bush or tree. If the crop results from the labor, the laborer should have his lien upon that which he has produced.

The judgment should be affirmed.