JACK HARTWELL AND JENNIFER HARTWELL, PLAIN-
TIFFS, IANTHA, INC., A NEW JERSEY CORPORATION,
PLAINTIFF-INTERVENOR, v. HARTWELL CO., INC. AND
JAMES LAING AND MARILYN LAING, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 12, 1979.

92

*Mr. Barry S. Greenberger* for plaintiffs.

*Mr. Robert A. Weiss* for plaintiff-intervenor.

*Mr. Adolph V. Carbone* for defendants.

WILEY, J. S. C. On or about September 29, 1975 Iantha, Inc. (Iantha) and Hartwell Co., Inc. (Hartwell Co.) entered into a lease of premises owned by Iantha, located in the Township of Dover. The lease was for a term of ten years commencing November 1, 1975 and expiring October 31, 1985. On or about September 2, 1977 James Laing and Marian Laing purchased all the shares of stock of Hartwell Co., Inc., of which Jack Hartwell and Jennifer Hartwell were the sole shareholders. The written agreement of sale provided that the sellers had a right to proceed to exercise their rights under a security agreement attached to the contract if the buyers defaulted on the weekly installment payments of $100. The security agreement gave the sellers a security interest in basically all the collateral utilized in the business to secure a sum of $25,000, which was the principal purchase price. The named debtor in the security agreement was Hartwell Co., Inc. and James Laing executed the security agreement on behalf of Hartwell Co., Inc. in his

capacity as president. On or about September 16, 1977 a sufficient financing statement was filed in the office of the Secretary of State in Trenton, *N. J. S. A.* 12A:9–401(1)(c), perfecting the security interest. *N. J. S. A.* 12A:9–301(1)(b); *Shaw Mudge & Co. v. Sher-Mart Mfg. Co., Inc.*, 132 *N. J. Super.* 517, 521 (App. Div. 1975).

The buyers' failure to make regular payments commenced in November 1977. In May 1978 the sellers' attorney mailed a notice to the buyers demanding monies owed and accelerating the entire balance due in accordance with the terms and provisions of the sales contract. In June 1978 the sellers filed a complaint requesting, among other things, that the buyers be compelled to turn over to the sellers all assets listed in the security agreement. On July 19, 1978 the judge ordered the buyers to immediately pay $600 to plaintiffs and to conform with the terms of the contract by paying $100 weekly to plaintiffs. The order also provided that in the event defendants defaulted in regard to these payments, plaintiffs could obtain "immediate possession and other relief sought in the complaint" upon filing an *ex parte* affidavit setting forth such default.

In October 1978 plaintiffs filed an affidavit stating that there had been a default. Upon motion by the landlord, Iantha, Inc., it was allowed to intervene in the suit for purposes of enforcing a landlord's lien. In December 1978 a limited hearing concerning the priority dispute between the landlord and the secured creditor was held. It was decided that the parties would file briefs, affidavits and other papers with the court within two weeks and that the court would determine the issues without further oral argument. The judge requested and received additional affidavits and materials from the secured creditors in February 1979.

Iantha's lien arises from *N. J. S. A.* 2A:42–1, which provides that no goods upon leased real estate may be taken by virtue of any process unless the party suing out the process pays the landlord all unpaid rent up to one year's rent. Hartwell Co., Inc. has not paid its rent for some time.

### Validity of the Security Agreement

In the instant case the shareholders sold all the stock of the corporation to the Laings, who, as the new officers, gave back a security agreement of the corporation to the sellers.

The first issue to be addressed is whether such a security agreement is valid. It is generally held that the transaction is valid as between the debtor-corporation and the secured party who sold the stock. *Heidler v. Werner & Co.,* 97 *N. J. Eq.* 505, 508 (E. & A. 1925); *Roxbury State Bank v. Clarendon,* 129 *N. J. Super.* 358, 370 (App. Div.), certif. den. 66 *N. J.* 316 (1974); *Futurity Realty Corp. v. Passaic Nat'l Bank & Trust Co.,* 2 *N. J. Super.* 175, 180 (Ch. Div. 1948); Annotation, "Validity of obligation given by corporation incident to purchase of entire stock by sole shareholder," 71 *A. L. R.* 3d 639, 646 (1976). But the validity of the transaction as against creditors of the corporation is questionable. Cases prior to *Roxbury State Bank, supra,* stated that a corporation may not lawfully execute an obligation for the payment of money or create a security interest in its assets as an accommodation for one of its officers. *Heidler v. Werner Co.,* 97 *N. J. Eq.* at 507–08; *Futurity Realty Corp. v. Passaic Nat'l Bank & Trust Co.,* 2 *N. J. Super.* at 179.

*Roxbury State Bank, supra,* noted that a predominant object of the 1968 New Jersey Business Corporation Act, *N. J. S. A.* 14A:1–1 to 16–4, was to expand the powers of corporations in light of modern business practices. 129 *N. J. Super.* at 368. The court also noted that the 1968 revision included provisions regulating fraudulent conveyances. *Id.* On the basis of these facts, the court held that the validity of a mortgage upon the property of a corporation is controlled by the fraudulent conveyance sections of the statute. *N. J. S. A.* 14A–14–1 to 14–27. The factual situation in the instant case is similar to that present in *Roxbury State Bank.*

The particular section controlling, *N. J. S. A.* 14A: 14–10, contains several subsections. *N. J. S. A.* 14A:14–10

(1) provides that an obligation incurred by a corporation which is or will thereby be rendered insolvent is fraudulent as to existing creditors without regard to actual intent if the obligation was incurred without a fair consideration. *N. J. S. A.* 14A:14–10(1); *Roxbury State Bank v. Clarendon, supra,* 129 *N. J. Super.* at 369. On the date the security agreement between the Hartwells and Hartwell Co., Inc. was executed, no rent was owing. The landlord's lien under 2A:42–1 is not a lien that arises at the inception of the lease. See *Bodell v. Real Securities Invest. Co.,* 89 *N. J. L.* 707, 708 (E. & A. 1916) (*per curiam*); *Franz Realty Co. v. Welsh,* 86 *N. J. Eq.* 228, 230 (E. & A. 1916). It is not actually a lien at all, but rather a statutory right to preference in payment over other creditors. *Franz Realty Co. v. Welsh, supra* at 230; *Farmers & Merchants Nat'l Bank v. Boymann,* 155 *N. J. Super.* 120, 124 (Cty. Ct. 1977); *Greenspan & Greenberger Co. v. Goerke Co.,* 112 *N. J. Eq.* 391, 396 (Ch. 1933), aff'd *per curiam* 114 *N. J. Eq.* 19 (E. & A. 1933). Iantha, therefore, was not an "existing creditor" at the time of the creation of the security interest and *N. J. S. A.* 14A–14–10(1) is not applicable.

Subsection 4 of *N. J. S. A.* 14A:14–10 provides that: "Every transfer made and every obligation incurred by a corporation with actual intent * * * to hinder, delay, or defraud either present or future creditors of the corporation, is fraudulent as to both such present and future creditors." There has been no suggestion that Hartwell Co., Inc. had actual intent to defraud Iantha, Inc. or any other subsequent creditor, and *N. J. S. A.* 14A:14–10(4) is thus not applicable. *N. J. S. A.* 14A:14–10(5) also has no application because no receivership has been commenced.

The two remaining material provisions of *N. J. S. A.* 14A:14–10 provide:

(2) Every transfer made without fair consideration when the corporation making it is engaged or is about to engage in a business or transaction for which the property remaining in its hands after the transfer is an unreasonably small capital, is fraudulent as to

creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to its actual intent.

(3) Every transfer made and every obligation incurred without fair consideration when the corporation making the transfer or entering into the obligation intends to or believes that it will incur debts beyond its ability to pay as they mature, is fraudulent as to both present and future creditors. [*N. J. S. A.* 14A:14-10(2), 10(3)]

Plaintiff contends that the corporation received fair consideration in exchange for the grant of a security interest in virtually all its assets because plaintiff forgave a $17,622.45 debt that the corporation owed to the Hartwells. Under the Uniform Fraudulent Conveyance Act, *N. J. S. A.* 25:2-7 to -19, satisfaction of an antecedent debt is fair consideration. *N. J. S. A.* 25:2-9(a) ; *Schwartz v. Battifarano*, 2 *N. J.* 478, 484 (1949) ; *Johnson v. Lentini*, 66 *N. J. Super.* 398, 405 (Ch. Div. 1961). Since the provisions of *N. J. S. A.* 14A: 14-10 are very similar to sections of the Uniform Fraudulent Conveyance Act, *N. J. S. A.* 25:2-10 to 13, the law developed under the Uniform Fraudulent Conveyance Act may be applied to the Corporation Act. See *Roxbury State Bank v. Clarendon, supra,* 129 *N. J. Super.* at 369. The court holds, therefore, that satisfaction of an antecedent debt is fair consideration within the context of *N. J. S. A.* 14A:14-10.

In the instant case the corporation gave the Hartwells a security interest in its assets in exchange for a release of a debt owed by the corporation to the Hartwells. While the forgiveness of the debt was part of the bargain between the Hartwells and the Laings, it inured to the benefit of the corporation. The corporation received fair consideration in exchange for the creation of the security interest.

The amount of the antecedent debt was $17,622.45. The amount of debt secured by the security agreement was $25,000. Since the consideration consists of the forgiveness of the antecedent debt, the security interest is only valid in the amount of $17,622.45.

### Priority Between the Hartwells and Iantha, Inc.

Since the security interest created by the corporation is valid and the only assets the corporation has are located upon the leased premises, a dispute as to priorities between the landlord and the secured creditor arises. The amount that could be realized by a sale of the assets is less than the amounts due under the contract of sale and the lease.

It is conceded that the Hartwells took all necessary steps to perfect their security interest. *N. J. S. A.* 12A:9–303(1). The Uniform Commercial Code expressly states that it does not apply to a landlord's lien. *N. J. S. A.* 12A:9–104(b). It does not govern in a dispute between a perfected security interest and a statutory landlord's lien. *In re Einhorn Bros., Inc,* 272 *F.* 2d 434, 440–41 (3 Cir. 1959); *Universal C. I. T. Credit Corp. v. Congressional Motors, Inc.,* 246 *Md.* 380, 389, 228 *A.* 2d 463, 469 (Ct. App. 1967); *Chessport Millworks, Inc. v. Solie,* 86 *N. M.* 265, 267, 522 *P.* 2d 812, 814 (Ct. App. 1974); *Associates Financial Services of Texas, Inc. v. Solomon,* 523 *S. W.* 2d 722, 724 (Tex. Civ. App. 1975). There is no reported New Jersey opinion rendered after the effective date of the enactment of the Uniform Commercial Code explicitly deciding the priorities between a landlord's lien arising under *N. J. S. A.* 2A:42–1 and a holder of a perfected security interest.[1] In *Farmers & Merchants Nat'l Bank v. Boymann,* 155 *N. J. Super.* 120

---

[1] *In re Holly Knitwear, Inc.,* 140 *N. J. Super.* 375 (App. Div. 1976), held that a landlord's lien arising under *N. J. S. A.* 2A:44–166 had priority over a secured creditor. *N. J. S. A.* 2A:44–166 is not applicable in the instant situation for two reasons: (1) it applies when the premises are used for manufacturing purposes, which is not the case here; (2) the language of the statute explicitly gives the landlord priority over any lien or mortgage created after the machinery or chattels are placed in the leased premises. Moreover, pre-case law gave the landlord priority over chattel mortgages, see *Gibraltar Factors Corp. v. Slapo,* 23 *N. J.* 459, 462 (1957), *app. dism.* 355 *U. S.* 13, 78 *S. Ct.* 44, 2 *L. Ed.* 2d 20 (1957), which is not the case with liens arising under *N. J. S. A.* 2A:42–1.

(Cty. Ct. 1977), the court had to decide several issues. concerning the priorities between a landlord and a creditor holding an execution. The court reviewed the history and purpose of the landlord's statutory lien in *N. J. S. A.* 2A:42–1. In *dictum* the court stated (at 124) that the landlord has "the right to a preference in payment, out of the tenant's goods and chattels on the demised premises, over other creditors, including those holding executions, *who are not lienholders.*" (Emphasis supplied). A security interest is a lien. See 51 *Am. Jur.* 2d, *Liens,* § 1 at 142 (1970).

Since the foregoing language in *Boymann* is *dictum* in regard to a priority dispute between a landlord and a secured creditor, the court undertakes an independent analysis of the issue. Post-Code cases in other jurisdictions confronted with this issue have concluded that since the Uniform Commercial Code does not govern, pre-Code law is controlling. *In re Einhorn Bros., Inc., supra,* 272 *F.* 2d at 440–41; *Universal C. I. T. Credit Corp. v. Congressional Motors, Inc., supra,* 246 *Md.* at 390, 228 *A.* 2d at 470; *Associates Financial Services of Texas, Inc. v. Solomon, supra,* 523 *S. W.* 2d at 724. In New Jersey pre-Code law held that a landlord's lien based upon *N. J. S. A.* 2A:42–1 was subordinate to a seller's rights under a conditional sales contract. *Motor Credit Corp. v. Ray Guy's Trailer Court, Inc.,* 6 *N. J. Super.* 563, 567 (Law Div. 1949). The interest of a holder of a chattel mortgage was also superior to the landlord's lien. *Bodell v. Real Securities Invest. Co., supra,* 89 *N. J. L.* at 708; *Franz Realty Co. v. Welsh, supra,* 86 *N. J. Eq.* at 230; *Woodside v. Adams,* 40 *N. J. L.* 417, 419 (Sup. Ct. 1878). In addition, cases involving priority disputes between landlords and general creditors arising out of the insolvency of a corporation have stated that lienholders have a preference over the landlord's lien. *In re Spies-Alper Co.,* 231 *F.* 535, 538 (D. N. J. 1916); *Wood v. McCardell, West & Farrell Carriage Co.,* 49 *N. J. Eq.* 433, 435 (Ch. 1892).

 On the basis of the foregoing authorities, the correct rule would seem to be that a landlord's lien based upon

*N. J. S. A.* 2A:42–1 is subordinate to a security interest perfected according to the Uniform Commercial Code.[2]

The attorney for the plaintiffs will prepare an order providing that the plaintiffs have first priority in the assets of Hartwell Co., Inc. up to $17.622.45.

---

[2]It has been suggested that when the security interest is perfected after the personal property is placed upon the leased premises, the landlord's statutory lien should have priority. 69 *Am. Jur.* 2d, *Secured Transactions*, § 506 at 386 (1973). However, in New Jersey, pre-Code law is clear that a tenant could grant a chattel mortgage on property located on the landlord's premises which would be superior to the landlord's lien. *Bodell v. Real Security Invest. Co., supra*, 89 *N. J. L.* at 708; *Franz Realty Co. v. Welsh, supra*, 86 *N. J. Eq.* at 230; *Woodside v. Adams, supra*, 40 *N. J. L.* at 419; *Wood v. McCardell, West & Farrell Carriage Co., supra*, 49 *N. J. Eq.* at 435.