[No. 51847–5.   En Banc.   September 4, 1986.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
IN
*In the Matter of*
BRAZIER FOREST PRODUCTS, INC., ET AL, *Debtors.*

BRAZIER FOREST INDUSTRIES, INC., ET AL, *Plaintiffs,*
v. NORTHERN TRANSPORT, INC., ET AL,
*Defendants.*

*Shulkin, Hutton & Bucknell, Inc., P.S., Sheena R. Aebig,* and *Richard G. Birinyi,* for plaintiffs.

*Bell & Ingram, P.S., William F. Ingram, Lorna Bigsby, LeSourd & Patten,* and *Jeffrey C. Wishko,* for defendants Northern Transport, et al.

*Ulin, Dann, Elston & Lambe,* by *Richard L. Lambe,* for defendant St. Paul Fire & Marine Insurance Co.

*Hatch & Leslie,* by *Willard Hatch, Daniel R. Merkle,* and *Claudia M. Backlund,* for defendant Rainier National Bank.

DORE, J.—The United States District Court for the Western District of Washington, upon the recommendation of the United States Bankruptcy Court, has certified the following questions of state law to this court:

1. Can entities (including corporations, partnerships, and sole proprietorships), other than individuals who actually perform physical labor, properly claim a logger's lien under RCW 60.24.020?

2. Since corporations, partnerships, and sole proprietorships may properly file liens for hauling/trucking services rendered in transporting cut timber, if these entities may not file liens for logging services other than transporting, would such entities' mixing of a lien claim for transporting services with lien claims for logging labor invalidate the entire lien?

3. What is the relative priority of logger's liens, stumpage liens and a security interest arising under the Uniform

Commercial Code in inventory (consisting of cut timber, logs and wood products) and receivables?

First, we hold that legally cognizable entities, including corporations, partnerships and sole proprietorships, are entitled to claim logger's liens under RCW 60.24.020. Second, because of our holding on the initial issue, we need not resolve the question of mixing valid and invalid lien claims. Third, we hold that logger's liens are prior to stumpage liens and both of these types of liens are prior to a security interest arising under the Uniform Commercial Code.

#### FACTS

Brazier Forest Products, Inc., and Brazier Forest Industries, Inc., are lumber manufacturers. The normal course of Brazier's business is to obtain rights to cut timber on tracts of land and then to contract with others to perform various functions necessary to produce and deliver cut logs from standing timber. The functions include road building, road and site maintenance, "cutting" (severing), "bucking" (cutting into lengths), "yarding" (moving the fallen and bucked trees to a central loading point in the woods), "loading" (placing onto trucks), and "trucking" (delivering the logs to processing sites). Either along the delivery route or at the mill site, the cut logs are "scaled" (measured). Brazier does not maintain its own employees to perform these functions and subcontracts the entire logging process to others. Some of the subcontractors perform single logging functions, while others perform multiple functions or the entire logging operation at a given site. A number of parties in this case have claimed liens involving these functions pursuant to RCW 60.24.020.

In all cases relevant to this proceeding, the United States Forest Service owned the land on which Brazier acquired timber cutting rights and on which the operations giving rise to the logger's lien claims were performed. Brazier was to pay the United States Forest Service an amount fixed by contract for the timber. Pursuant to the contracts between the Forest Service and Brazier, title did not pass to Brazier

until the logs were scaled and paid for. The contracts allowed the posting of a payment bond to qualify as payment. St. Paul Fire and Marine Insurance Company provided such a bond with Brazier as the principal and the United States Forest Service as obligee.

The logger's lien claimants operate their businesses in a variety of ways. Of the approximately 50 Washington logger's lien claimants, 20 are corporations and the remainder are individual proprietorships or partnerships. The corporations acted either through employees or subcontractors in performing services for Brazier. The sole proprietorships and partnerships typically performed the contracts with a mix of the personal labor of the proprietors or partners and the labor of hired persons and subcontractors. In some instances, the individual proprietors or partners performed all the labor.

In all instances Brazier was to pay the logger's lien claimants for labor and services performed in an amount fixed by contract. Normally, payment was to be made on one of the following bases: for cutting, yarding and loading, at a specified rate per 1,000 board feet net, as scaled; for trucking, either at Washington Utilities and Transportation Commission rates as of the time of the haul or at rates independently negotiated before the haul.

Some of the cut logs obtained by Brazier were delivered, pursuant to contract, to third party mills. The remaining logs were delivered to Brazier's own mills for processing into lumber or other wood products. The third party mills were to pay Brazier on the basis of the number of 1,000 board feet contracted for and delivered. These mills still owe Brazier a significant amount of money as a result of prebankruptcy sales of logs and wood products. Proceeds from postbankruptcy sales of logs and wood products are currently held in a blocked account.

In the summer of 1984, Brazier defaulted in the payment of many of its logging subcontractors. A substantial number of the subcontractors (the logger's lien claimants) filed lien claims pursuant to RCW 60.24 in various Washington

counties. In the majority of these lien claims, the claimant is identified as a corporation, partnership or sole proprietorship, and the amount claimed is the alleged unpaid portion of the contract price. Many of the lien claims are totaled, without segregation or allocation of the amount due as to each type of logging service performed.

In the summer of 1984, Brazier also defaulted in payments due to the Forest Service under its timber sales contracts. St. Paul has paid the Forest Service in full pursuant to the terms of its bond and has a subrogation right to the Forest Service's stumpage lien claims.

Rainier National Bank provided financing for the majority of Brazier's operations, including the purchase, maintenance, manufacturing and disposition of lumber, logs and other wood products. As of the date of Brazier's petitions in bankruptcy, the outstanding balance owed to Rainier Bank was approximately $33 million.

Before any of the lien claims were recorded, Brazier executed certain security interests in favor of Rainier Bank under Article 9 of the Uniform Commercial Code. RCW 62A.9. Security agreements covering inventory and proceeds, and corresponding financial statements, described covered collateral as follows: "All inventory consisting of cut timber, logs, lumber and sundry wood products wherever located, whether now owned or hereafter acquired by Debtor" and "All accounts and contract rights of Debtor now or hereafter existing or arising out of Debtor's business operations." Financing statements covering Brazier's inventory and accounts receivable in Washington were filed with the State Department of Licensing and the Pierce County Auditor. Brazier's contracts with the lien claimants covered standing timber located in a number of Washington counties, including Skamania, Chelan, Snohomish, Mason, Lewis and Kittitas, but not including Pierce.

In August 1984 Brazier filed petitions under Chapter 11 of the Bankruptcy Code. On September 6, 1984, Brazier filed a request to sell its log inventory free and clear of the liens claimed. The court entered an order authorizing the

sale, but provided that the liens should attach to the proceeds of sale with the same effect and to the same extent as if they had attached to the logs.

On or about March 21, 1985, Brazier applied to the Bankruptcy Court for an order establishing the priority of logger's lien claims, the United States Forest Service stumpage lien, and Rainier Bank's security interest, and for authority to disburse funds acquired from the inventory sales. Brazier, Rainier Bank and St. Paul contend that only individual laborers are entitled to logger's liens based on their labor under RCW 60.24. They further assert that the entire lien fails where disallowable items are included in the claim and cannot be segregated by information appearing on the face of the lien. On these and other bases, they challenge the validity of most of the 50 logger's liens totaling over $2.5 million in claims. The logger's lien claimants assert that logger's liens are available to corporations and other employing persons or entities under RCW 60.24.

Rainier also argues that its security interests under RCW 62A.9 take priority over the lien claims asserted under RCW 60.24. Brazier, St. Paul, and the logger's lien claimants assert that the lien claims take priority over Rainier's security interests.

Upon the Bankruptcy Court's request, the United States District Court for the Western District of Washington has certified these questions to this court pursuant to RCW 2.60 and RAP 16.16.

### ENTITLEMENT TO LOGGER'S LIEN

The first question this court is asked is whether corporations, partnerships, and sole proprietorships are entitled to claim logger's liens under RCW 60.24.020, which provides,

> *Every person performing labor upon or who shall assist in obtaining or securing saw logs, spars, piles, cord wood, shingle bolts or other timber,* and the owner or owners of any tugboat or towboat, which shall tow or assist in towing, from one place to another within this state, any saw logs, spars, piles, cord wood, shingle bolts or other timber, and the owner or owners of any team or

any logging engine, which shall haul or assist in hauling from one place to another within this state, any saw logs, spars, piles, cord wood, shingle bolts or other timber, and the owner or owners of any logging or other railroad over which saw logs, spars, piles, cord wood, shingle bolts, or other timber shall be transported and delivered, *shall have a lien upon the same for the work or labor done upon,* or in obtaining or securing, or for services rendered in towing, transporting, hauling, or driving, the particular saw logs, spars, cord wood, shingle bolts, or other *timber in said claim of lien* described whether such work, labor or services was done, rendered or performed at the instance of the owner of the same or his agent. Scalers, and bull cooks, and cooks, flunkeys and waiters in lumber camps, shall be regarded as persons who assist in obtaining or securing the timber herein mentioned.

(Italics ours.)

Brazier, Rainier, and St. Paul assert that the resolution of this initial question is governed by the court's construction of the logger's lien statute in *Campbell v. Sterling Mfg. Co.,* 11 Wash. 204, 39 P. 451 (1895). In *Campbell* an individual who had employed men to work on logs but did not directly perform the labor himself claimed a logger's lien. This court denied the claim, holding the logger's lien statute does not provide "for a lien for a person who does not directly or indirectly perform labor upon . . . timber or logs." *Campbell,* at 206. The court stated that "the object of the law was to give a lien to the men who directly performed the labor." *Campbell,* at 206. Thus, under *Campbell,* entities other than individuals who actually perform labor may not claim a logger's lien pursuant to RCW 60.24-.020.

There are compelling reasons, however, why *Campbell* should not be regarded as determinative on this issue.

## Statutory Construction

The term "person" as it is used in RCW 60.24.020 is not defined in that provision nor elsewhere in RCW Title 60. "Person" is defined, however, in the general definitional section of the Revised Code of Washington. RCW 1.16.080

provides: "The term 'person' may be construed to include the United States, this state, or any state or territory, or any public or private corporation, as well as an individual." This definition provides strong support for our conclusion that legally cognizable entities, as well as individuals, may claim logger's liens. Nonetheless, because RCW 1.16.080 states that "'person' may be construed . . ." to include corporations, the statute only allows, but does not require such a construction. *Denny Hotel Co. v. Schram,* 6 Wash. 134, 137, 32 P. 1002 (1893).

■ If RCW 1.16.080 does not apply, the court should look to the common law for a useful definition of "person." Where a term is not defined in a statute, it is presumed that the Legislature intended it to mean what it did at common law. *In re Marriage of Gimlett,* 95 Wn.2d 699, 701, 629 P.2d 450 (1981). At common law, the term "person" includes both natural and artificial persons, and therefore corporations. 18 Am. Jur. 2d *Corporations* § 63 (1985). Thus, under either the statutory definition or the common law, the term "person" should include corporations, partnerships, and sole proprietorships. On this basis alone, *Campbell* is of dubious persuasive authority.

■ Moreover, the logger's lien statute is remedial in nature and ought to be liberally construed in the interests of labor. *Proulx v. Stetson & Post Mill Co.,* 6 Wash. 478, 481, 33 P. 1067 (1893); *In re Little Elk Logging Co.,* 218 F. 142, 143 (W.D. Wash. 1914). It makes little sense to grant the protections of the logger's lien statute to individual loggers but deny it to loggers who take advantage of other familiar business forms. In the present case of the approximately 50 Washington logger's lien claimants, 20 are corporations and the remainder are individual proprietorships and partnerships. The corporations acted through either employees or subcontractors in performing services. The sole proprietorships and partnerships typically performed the contracts with a mix of the personal labor of the proprietors or partners and the labor of hired persons and subcontractors. Thus, there is likewise no sound policy

basis for the *Campbell* decision; to hold otherwise would defeat the remedial purposes of the logger's lien statute.

## Viability of Campbell

■ Although *Campbell* has never been expressly overruled, it also has not been followed when applying other similarly or identically worded statutes. In cases concerning the mechanic's lien statute, RCW 60.04.010, the Court of Appeals permitted entities to claim liens without addressing whether an entity qualified as a "person" under the statute. *See, e.g., Northlake Concrete Prods., Inc. v. Wylie,* 34 Wn. App. 810, 663 P.2d 1380 (1983); *Expert Drywall, Inc. v. Brain,* 17 Wn. App. 529, 564 P.2d 803 (1977). Also, this court has held that a corporation could claim a lien under a predecessor to the chattel lien statute, Laws of 1905, ch. 72, § 1, p. 137, which provided a lien for a "blacksmith, wagon–maker, machinist, or boiler–maker". *Pacific Iron & Steel Works v. Goerig,* 55 Wash. 149, 104 P. 151 (1909).

*Campbell* likewise finds little support in the decisions of other jurisdictions. Other courts have often held that corporations could claim liens under statutes providing liens for "any person." *See, e.g., Gaskell v. Beard,* 65 N.Y. Sup. Ct. 101, 11 N.Y.S. 399 (1890); *Chapman v. Brewer,* 43 Neb. 890, 62 N.W. 320 (1895). In some of these decisions, courts have construed logger's lien statutes with language similar to or the same as that in RCW 60.24.020. In *McDonald–Weist Logging Co. v. Cobb,* 278 F. 167 (9th Cir. 1921), the court construed the Alaska logger's lien statute, which has the same language as Washington's, to apply to corporations as well as natural persons. The court distinguished the general language in the Alaska statute from statutes containing restrictive words, such as those which established a lien right for "personal services" or "manual labor." *McDonald–Weist,* at 168. *See also Breault v. Archambault,* 64 Minn. 420, 67 N.W. 348 (1896). In *Acco Contractors, Inc. v. McNamara & Peepe Lumber Co.,* 63 Cal. App. 3d 292, 133 Cal. Rptr. 717 (1976), the court held

that a corporation qualified for a logger's lien under Cal. Civ. Code § 3065 (Deering 1972), which provides a lien for "[a]ny person who shall, by his own labor, or by using his livestock, machinery or appliances . . . do or perform any work . . ." The court relied partly on Cal. Civ. Code § 14 (Deering 1971), which provides, "the word person includes a corporation . . ." This language is similar to the definition of "person" found in RCW 1.16.080.

These considerations lead to the inevitable conclusion that *Campbell* was wrongly decided. Nor can it be reasonably contended that the parties justifiably relied on the rule of *Campbell.* In addition to *Northlake Concrete, Expert Drywall,* and *Pacific Iron & Steel Works,* other subsequent decisions demonstrate that the viability of *Campbell* has been questioned and undermined on several occasions. In *Blumauer v. Clock,* 24 Wash. 596, 64 P. 844 (1901), this court allowed a man to claim a lien for work done by his brother. The court acknowledged *Campbell,* but noted that "the court of later years has been inclined to construe the lien laws more liberally in favor of lienors . . ." *Blumauer,* at 604. In *DeLong v. Hi Carbon Coal Co.,* 155 Wash. 265, 283 P. 1079 (1930), an individual claimant who employed others to perform work as well as personally working was allowed a lien. More recently, the Court of Appeals was urged to expressly overrule the *Campbell* case. *Moss v. West Tacoma Newsprint Co.,* 1 Wn. App. 361, 462 P.2d 256 (1969). The court recognized that the position taken in *Campbell* had been ignored or at least weakened in subsequent years, but found it unnecessary to consider the request due to the disposition of the case.[1]

It is plain that *Campbell* was wrongly decided and has been of dubious authority since. The decision is overruled; we hold that fictional entities, including corporations, partnerships and sole proprietorships, are entitled to claim logger's liens under RCW 60.24.020.

---

[1] Of course, the Court of Appeals was without authority in any event to overrule one of our cases.

Because we would hold the logger's liens valid, the question of mixing valid and invalid lien claims need not be addressed.

## LIEN PRIORITIES

The final question involves the relative priority of logger's liens, stumpage liens and a security interest arising under the Uniform Commercial Code in inventory, consisting of cut timber, logs, and wood products, and receivables. The logger's lien claimants and St. Paul both claim statutory liens pursuant to RCW 60.24. The logger's lien claimants assert liens for various logging services pursuant to RCW 60.24.020, as discussed above. St. Paul claims a stumpage lien under RCW 60.24.035 which provides: "Any person who shall permit another to go upon his timber land and cut thereon saw logs . . . or other timber, has a lien upon the same . . ." RCW 60.24.038 addresses the priority to be given to liens claimed pursuant to RCW 60.24: "The liens provided for in this chapter are preferred liens and are prior to any other liens . . ."

Rainier has a security interest in Brazier's inventory and accounts receivable pursuant to Article 9 of the Uniform Commercial Code.[2] Article 9 contains several provisions addressing its interaction with statutory liens. RCW 62A.9–102(2) provides in part, "This Article does not apply to statutory liens except as provided in RCW 62A.9–310."

---

[2] St. Paul argues that no Article 9 security interest could attach to the logs and timber, pointing to RCW 62A.9–104(e) which provides that Article 9 does not apply "to a transfer by a government or governmental subdivision or agency". St. Paul contends that this provision excludes transfers of property by the government such as the United States Forest Service made to Brazier. The Official Comment to section 9–104, however, indicates that section 9–104(e) is intended to exclude transactions in which the government is a borrower. Official Comment 5, U.C.C. § 9–104 (1972). *See also In re Altek Sys., Inc.*, 14 Bankr. 144 (Bankr. N.D. Ill. 1981). The draftsmen's statement of reasons for 1972 changes in the official text confirms this: "paragraph (e) has been added to make clear that this Article does not apply to security interests created by governmental debtors." U.C.C. app. § 9–104, Reasons for 1972 Change (1972). Since the United States Forest Service was not a debtor in this case, this transaction is not excluded from Article 9 pursuant to section 9–104(e).

Similarly, RCW 62A.9–104 provides in pertinent part:

This Article does not apply

. . .

(c) to a lien given by statute or other rule of law for services or materials or to a lien created under chapter 60.13 or 22.09 RCW except as provided in RCW 62A.9–310 on priority of such liens; . . .

RCW 62A.9–310(1) provides:

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest only if the lien is statutory and the statute expressly provides for such priority.[3]

### Application of RCW 62A.9–310(1)

The logger's and stumpage liens claimed in this case are nonpossessory liens. The lien claimants and Rainier disagree as to the application of RCW 62A.9–310(1) in determining the priority between nonpossessory liens and perfected security interests. The lien claimants contend that nonpossessory liens are simply not within the scope of RCW 62A.9–310(1) and are, therefore, governed instead by pre–Code law including the lien statutes and common law. Rainier, on the other hand, contends that RCW 62A.9–310(1) does apply to nonpossessory liens. According to Rainier's construction of the provision, in order for a statutory lien to be accorded priority over a perfected security interest, the lien claimant must have possession of the goods and the lien statute must expressly provide that the lien is superior. In other words, under Rainier's interpretation, perfected security interests would always take priority over nonpossessory liens pursuant to RCW 62A.9–310(1).

It is unclear how the drafters of Article 9 intended sec-

---

[3]This provision varies from the official text of the U.C.C. by substituting "only if the lien is statutory and the statute expressly provides for such priority" for the following language: "unless the lien is statutory and the statute expressly provides otherwise." *See* U.C.C. § 9–310, Official Text (1972).

tion 9–310 to affect priorities between nonpossessory liens and security interests. 2 G. Gilmore, *Security Interests in Personal Property* § 33.5 (1965). Some commentators, however, consider nonpossessory liens to be outside the scope of section 9–310 and governed by prior statutory and case law. *See* Note, *Nonconsensual Liens Under Article 9,* 76 Yale L.J. 1649, 1659 (1967) (stating that commentators treat mechanic's liens in this fashion); Note, *Priorities Between Article Nine Security Interests and Statutory Liens in Iowa,* 23 Drake L. Rev. 169, 176 (1973) (concluding this interpretation is supported by the greater weight of authority).

The Washington Comments on RCW 62A.9–310 touch on this issue, but do not provide clear guidance. They state in part,

> RCW ch 60.08 [chattel lien] and RCW ch 60.56 [agister's lien] appear to be the only Washington statutes which create liens in chattels under such circumstances that the lienor might be in possession and hence in a position to invoke sec. 9–310.

Washington Comments, RCWA 62A.9–310, at 407. This comment can be taken in two ways. It could imply that the lienor must be in possession in order to come within the scope of section 9–310, or alternatively, that the lienor must have possession to take advantage of the priority provided by section 9–310.

The only direct commentary on Washington's section 9–310 and nonpossessory liens reasons that the provision does not apply to such liens: "a nonpossessory lien) is not affected by § 9–310, and the priority issue will be answered either by the common law or more likely by what the lien statute provides." 2 Washington State Bar Ass'n, *Commercial Law Deskbook* § 18.3(2), at 18–4 (1982). Furthermore the *Deskbook* states specifically that the logger's lien given in RCW 60.24 is not a possessory lien, and therefore its priority over prior perfected security interests depends on RCW 60.24.038 rather than Article 9. *Deskbook,* at 18–6.

In other jurisdictions, courts have held that section 9–310

does not govern the question of priority between nonpossessory liens and perfected security interests. In *Leger Mill Co. v. Kleen–Leen, Inc.*, 563 P.2d 132, 135–36 (Okla. 1977), the court so held in the context of a nonpossessory feedmen's lien, rejecting the secured parties' argument that by excluding nonpossessory liens, section 9–310 subordinated them to security interests in all instances. *See also Board of Educ. v. Kolman*, 111 N.J. Super. 585, 270 A.2d 64 (1970) (section 9–310 does not apply to nonpossessory mechanic's lien). In contrast, Rainier cites cases holding that under section 9–310, a repairman must retain possession of goods for his statutory lien to have priority over a perfected security interest. *See Balzer Mach. Co. v. Klineline Sand & Gravel Co.*, 271 Or. 596, 533 P.2d 321 (1975); *Forrest Cate Ford, Inc. v. Fryar*, 62 Tenn. App. 572, 465 S.W.2d 882 (1970); *United States v. Crittenden*, 563 F.2d 678 (5th Cir. 1977), *vacated and remanded sub nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 59 L. Ed. 2d 711, 99 S. Ct. 1448 (1979). These cases, however, are distinguishable because they involved situations where the lienor took possession of the goods and then relinquished it, whereas in the logger's lien situation, possession of the goods is not required to establish a lien.

In summary, and in accordance with the predominant authority, nonpossessory liens are outside the scope of section 9–310 and therefore, their priority relative to a perfected security interest is governed by pre–Code statutory and common law. We conclude that this interpretation of section 9–310 is more reasonable than inferring from the provision that all nonpossessory liens are subordinate to perfected security interests.[4]

---

[4]Rainier also contends that RCW 62A.9–310(1) impliedly repeals the portion of RCW 60.24.038 which may be construed as governing priorities between log and stumpage liens and a perfected security interest. Repeal by implication is not favored, particularly when the later act includes a schedule of statutes repealed and that schedule does not contain the statute in question. *Washington State Welfare Rights Org. v. State*, 82 Wn.2d 437, 439, 511 P.2d 990 (1973). RCW Title 62A does include a schedule of repealed statutes, and RCW 60.24.038 is not on

## Pre–Code Priority

Having decided that section 9–310 does not govern the relative priority of logger's liens and a perfected security interest, we must determine priority according to pre–Code statutory and common law.[5] RCW 60.24.038 provides that logger's liens and stumpage liens are "preferred liens and are prior to any other liens . . ." The parties disagree as to whether the language "any other liens" includes a security interest such as Rainier's.

The logger's lien claimants contend that "any other liens" must be interpreted to include all types of encumbrances on the logs created as security for the payment of a debt, and that this must include a security interest. "A lien is an encumbrance upon property as security for the payment of a debt." *Anderson v. Grays Harbor Cy.*, 49 Wn.2d 89, 91, 297 P.2d 1114 (1956). This definition does seem to include a security interest, which the Uniform Commercial Code defines as "an interest in personal property or fixtures which secures payment or performance of an obligation." RCW 62A.1–201(37). Other courts have held that a security interest is a "lien". *See, e.g., Schulte v. Beneficial Fin. of Kan., Inc.*, 8 Bankr. 12, 15 (Bankr. D. Kan. 1980); *Hartwell v. Hartwell Co.*, 167 N.J. Super. 91, 100, 400 A.2d 529 (1979). It is reasonable, therefore, to construe the phrase

---

that list. *See* RCW 62A.10–102. Furthermore, the statutes at issue do not meet this court's two tests for repeal by implication. *See Local 497, Int'l Bhd. of Elec. Workers v. PUD 2*, 103 Wn.2d 786, 789, 698 P.2d 1056 (1985). First, RCW 62A.9–310(1) does not cover the entire subject matter of RCW 60.24.038, for the logger's lien provision governs the priority between logger's liens and "any other liens," not just security interests. Second, the two acts are not so clearly inconsistent that they cannot be reconciled by a reasonable construction. Our decision that RCW 62A.9–310(1) does not govern logger's liens is a fair construction which allows reconciliation of the statutes.

[5]Rainier claims that if we decide section 9–310 does not apply, St. Paul's claim is subordinate to Rainier's security interest because the United States Forest Service failed to file a purchase money security interest pursuant to RCW 62A.9–107, 62A.9–312. This argument is untenable because, as St. Paul notes, RCW 60.24.038 provides legitimate alternative means of obtaining an interest in logs.

"any other liens" in RCW 60.24.038 as including a security interest. Since RCW 60.24.038 provides that the liens provided for in RCW 60.24 are prior to "any other liens", the logger's liens and stumpage liens claimed are prior to a security interest.

Pre–Code case law also supports the conclusion that liens pursuant to RCW 60.24 should have priority over a security interest. In cases involving the farm laborer's lien statute, which had language similar to RCW 60.24.038, this court held that the laborer's lien was superior to a previously filed chattel mortgage. *See Sitton v. Dubois,* 14 Wash. 624, 45 P. 303 (1896); *Musgrave v. Atkinson,* 118 Wash. 323, 203 P. 973 (1922). In a case holding that a chattel mortgage was prior to an agister's lien, this court distinguished the agister's lien statute from the farm laborer's lien statute because the agister's lien statute did not have a provision making agister's liens prior to all other liens. *Levitch v. Link,* 95 Wash. 639, 642, 164 P. 233 (1917). Rainier cites other pre–Code cases in which priority was given to mortgages over other liens; however, none of these cases involved lien statutes with language similar to RCW 60.24-.038. *See, e.g., Fitch v. Applegate,* 24 Wash. 25, 64 P. 147 (1901); *Rothweiler v. Winton Motor Car Co.,* 92 Wash. 215, 158 P. 737 (1916).

We conclude that, pursuant to applicable pre–Code statutory and common law, the liens provided for in RCW 60.24 are prior to a security interest. We hold that logger's liens and stumpage liens have priority over a security interest arising under the Uniform Commercial Code.

Logger's Lien and Stumpage Lien Priority

Finally, while none of the parties has addressed the issue of priorities between the logger's liens and the stumpage lien, the question certified by the federal court could be interpreted as asking us to determine such priority, as well as the priority of those liens relative to the security interest. Thus, we briefly address this question here.

RCW 60.24.038 states in pertinent part, "as between

liens provided for in this chapter those for work and labor shall be preferred . . ." Logger's liens claimed pursuant to RCW 60.24.020 are for labor, while stumpage liens claimed pursuant to RCW 60.24.035 are not. Therefore, logger's liens are afforded priority over stumpage liens. *See also Greely v. Bank of Stevenson,* 169 Wash. 181, 189, 13 P.2d 493 (1932) (noting that a hauling lien is superior to a stumpage lien under a predecessor to RCW 60.24.038 containing essentially the same language).

CONCLUSION

In summary, we have determined the following response to the certified questions. First, legally cognizable entities, including corporations, partnerships and sole proprietorships, are entitled to claim logger's liens under RCW 60.24-.020. Second, because we hold the logger's liens valid, we do not address the question of mixing valid and invalid liens. Finally, while logger's liens are prior to stumpage liens, both of these liens are prior to a security interest arising under the Uniform Commercial Code.

UTTER, BRACHTENBACH, PEARSON, ANDERSEN, and GOODLOE, JJ., concur.

DURHAM, J. (concurring in part; dissenting in part)—I agree that logger's liens and stumpage liens have priority over a security interest arising under the Uniform Commercial Code. However, I do not agree that entities, other than individuals who actually perform physical labor, may claim logger's liens under RCW 60.24.020, and I dissent to that section of the majority opinion.

The majority overrules *Campbell v. Sterling Mfg. Co.,* 11 Wash. 204, 39 P. 451 (1895), in which this court held that a person who employs others to work on logs or other timber but does not perform the labor himself may not claim a lien under RCW 60.24.020. Unlike the majority, I believe that the rules of statutory construction, case law, and policy considerations militate against overruling this long-standing interpretation of the logger's lien statute.

Our courts have regularly held that statutes creating liens are in derogation of the common law, and thus must be strictly construed. *E.g., Dean v. McFarland,* 81 Wn.2d 215, 219–20, 500 P.2d 1244, 74 A.L.R.3d 378 (1972); *De Gooyer v. Northwest Trust & State Bank,* 130 Wash. 652, 653, 228 P. 835 (1924), *adhered to on rehearing,* 132 Wash. 699, 232 P. 695 (1925); *deMers v. Oxford,* 28 Wn. App. 770, 772, 626 P.2d 518 (1981). A lien statute will not be extended for the benefit of those who do not clearly come within its terms. *Dean v. McFarland, supra; De Gooyer v. Northwest Trust & State Bank, supra; deMers v. Oxford, supra.* The majority relies on the proposition that the lien statute is remedial and should be liberally construed in the interests of labor. This principle, however, is applied only after it has been determined that the claimant in question comes within the operation of the act. *De Gooyer,* at 653. Thus, the logger's lien statute must be construed strictly in deciding who may enjoy the status of a lienor, but once the right to claim a lien has been established, it must be liberally construed. *Diamond Nat'l Corp. v. Lee,* 333 F.2d 517, 526 (9th Cir. 1964); *Boone v. P & B Logging Co.,* 88 Idaho 111, 115–16, 397 P.2d 31 (1964); *Kidder v. Nekoma Lumber Co.,* 196 Or. 409, 413–14, 249 P.2d 754 (1952).

In the cases cited by the majority, the courts properly applied the rule of liberal construction because there was no question that the claimants were entitled to the status of lienors. *See Proulx v. Stetson & Post Mill Co.,* 6 Wash. 478, 33 P. 1067 (1893) (involving which property was subject to claimants' liens); *In re Little Elk Logging Co.,* 218 F. 142 (W.D. Wash. 1914) (concerning relative priority of lien claims). To the contrary, in the present case, the question is if certain entities are within the class of persons entitled to claim liens under the statute; thus, the principle of strict statutory construction applies.

In light of this rule, it was reasonable for the court in *Campbell* to interpret RCW 60.24.020 to provide for liens only for those who actually perform labor on the timber. *See also Puget Sound Log Scaling & Grading Bur. v. Dan-*

*aher Lumber Co.,* 121 Wash. 309, 311, 209 P. 530 (1922) (logger's lien statute was designed to protect "laborers who gain their livelihood by manual toil, and who might be imperfectly qualified to protect themselves"); *Garneau v. Port Blakely Mill Co.,* 8 Wash. 467, 470, 36 P. 463 (1894) (logger's lien statute insures that men who perform labor have a secure means of collecting wages).

The majority also asserts that subsequent decisions indicate that the viability of *Campbell* is questionable. No Washington case, however, has directly criticized the *Campbell* rule. In the Washington cases construing the logger's lien statute which the majority cites, the claimants participated directly in the labor on the timber and simply included in their claims the amounts owing to other laborers as well as themselves. *DeLong v. Hi Carbon Coal Co.,* 155 Wash. 265, 283 P. 1079 (1930); *Blumauer v. Clock,* 24 Wash. 596, 64 P. 844 (1901). Thus, in allowing liens to such claimants, these cases were not inconsistent with *Campbell's* holding that a person who does not perform labor himself may not claim a lien. Moreover, in more recent cases from other jurisdictions with statutes the same as RCW 60.24.020, courts have explicitly recognized and followed *Campbell. See Diamond Nat'l Corp. v. Lee, supra* at 525–26 (applying *Campbell* in construing an Idaho log lien statute essentially similar to RCW 60.24.020); *Feris v. Balcom,* 249 Or. 343, 346, 432 P.2d 684 (1967) (citing *Campbell* for the proposition that Washington's logger's lien statute, which is similar to Oregon's, applies only to those who directly perform labor).

Given the existing case law, the parties had a sound basis for relying on the principle that our logger's lien statute protects only individuals who actually perform physical labor. By changing this long–standing rule, the majority opinion does injustice to those who were entitled to depend on the law as it existed when they financed the logging operations.

Furthermore, the majority makes a decision which will significantly affect the timber industry without having the

information to assess its impact. This question is better left to the Legislature, which can thoroughly examine the potential effects of changing the rule. I agree with the following statement in a recent trial court decision holding a corporation may not claim a lien under RCW 60.24.020:

Whether a corporate employer or corporate log merchandiser, that is not "imperfectly qualified to protect itself" and all of whose "men who directly performed the labor" have received their pay checks, should be allowed lien rights to enforce payment of contract balances or log sale prices involves complex commercial policy decisions which the legislature, and not the court, is equipped to make.

Northwest Log, Inc. v. Mayr Bros. Logging Co., at 3, Grays Harbor County cause 84-2-00667-2.

I would adhere to the rule that RCW 60.24.020 was intended to benefit those who directly perform labor on logs. Therefore, I would hold that entities, other than individuals who actually perform physical labor, may not claim logger's liens pursuant to RCW 60.24.020. I concur with the majority's discussion of the relative priority of logger's liens, stumpage liens, and a security interest arising under the Uniform Commercial Code.

DOLLIVER, C.J., and CALLOW, J., concur with DURHAM, J.